2006 ND 245

**Christopher Paul HARSHBERGER, Plaintiff and Appellee**

v.

**Tannya Dawn HARSHBERGER, n/k/a Tannya Dawn Radke, individually, and as the natural guardian of A.D.M., a minor child, Defendant and Appellant.**

No. 20060039.

Supreme Court of North Dakota.

Nov. 28, 2006.

Charles L. Neff, Neff Eiken & Neff, P.C., Williston, ND, for plaintiff and appellee.

Bonnie Paradis Humphrey, Minot, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Tannya Dawn Harshberger, now known as Tannya Dawn Radke ("Radke"), appealed from a judgment granting Christopher Paul Harshberger primary physical care, custody, and control of their minor child. Because the district court did not have jurisdiction to decide the custody dispute under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), N.D.C.C. ch. 14–14.1, we vacate the judgment.

I

[¶ 2] Harshberger and Radke were married in Wibaux, Montana, in May 1995, and had a daughter who was born in April 1996. The parties were divorced in Montana on August 1, 1996. The Montana divorce decree granted Radke custody of their daughter and awarded Harshberger "reasonable visitation." Harshberger moved to Portland, Oregon, and Radke remained in Glendive, Montana, with their daughter and another of Radke's children. During late 1996 and early 1997, there were numerous referrals to Montana Child Protective Services regarding Radke's family, and the children were placed in "kinship foster care" on April 4, 1997.

[¶ 3] By November 14, 1997, Radke had moved to Stark County, North Dakota. On that date, a Montana district court issued an order finding the children were "youths in need of care as neglected or abused youths," and extending for 90 days the court's previous order granting the care, custody, and control of the children to Wibaux County Child and Family Services. The Montana court further ordered Wibaux County Child and Family Services to "make arrangements with the Stark County, North Dakota, Social Services Department for the purposes of initiating a transfer of the children at the end of the ninety-day period through use of the Interstate Compact." On December 23, 1997, the Montana court ordered the Montana Department of Public Health and Human Services to arrange for Christmas Day visitation between Radke and the children, and it appears the children were returned to Radke in Stark County on February 9, 1998.

[¶ 4] In 2001, Harshberger received notice of child support arrears and learned that Radke was living in Dickinson. On March 20, 2001, Harshberger brought an action in North Dakota district court under the Uniform Parentage Act, N.D.C.C. ch. 14–17, seeking an order for genetic testing and "a judicial determination whether he is, in fact, the biological father" of the child. At this time, Harshberger resided in Portland, Oregon, and Radke continued to reside in Dickinson. Radke did not object to genetic testing or register the Montana divorce judgment in North Dakota, *see Kostrzewski v. Frisinger*, 2004 ND 108, ¶¶ 12–17, 680 N.W.2d 271 (discussing registration procedures under the

UCCJEA), and on July 11, 2002, the district court ordered testing based on the parties' stipulation. The DNA tests proved Harshberger was the father, and he began paying child support. The court issued no order concluding Harshberger's paternity action.

[¶5] By January 17, 2003, Radke and the children had moved back to Montana. On that date Stark County Social Services sent its documentation on the family to Montana Family Services. The documentation informed Montana authorities that Stark County Social Services "had been considering court action to remove the children due to domestic violence, abuse and neglect." Montana Family Services began receiving additional reports of suspected neglect and abuse of the children in the home of Radke and her new husband during 2003 and 2004. In the spring of 2004, Radke and her family were living in Billings, Montana, and Harshberger, still a resident of Oregon, attempted to obtain visitation with his daughter.

[¶6] In the meantime, Harshberger's paternity action remained pending in the North Dakota court system. On April 15, 2004, the district court administrator served on the parties' attorneys a notice of intent to dismiss. Harshberger responded on April 30, 2004, with a motion to continue the action and to establish visitation rights with the child. Harshberger did not attempt to register the Montana divorce decree, which already awarded him "reasonable visitation" with the child. The court granted the motion to continue the pending action. A hearing on Harshberger's motion to establish visitation rights was held on November 29, 2004. At this time, Harshberger and his new wife were living in Spokane, Washington, and Radke and her family were living in Glendive, Montana. Harshberger and Radke appeared at the hearing and reached agreement on many facets of visitation, except some cost issues. On December 14, 2004, the district court issued an "interim" order establishing a visitation schedule, but reserved making the order permanent until the parties furnished financial information.

[¶7] Approximately four months later, on April 29, 2005, the district court for Dawson County, Montana, entered an order adjudicating one of Radke's children a "youth in need of care" and giving the Montana Department of Public Health and Human Services, Child and Family Service Division, temporary authority to conduct an investigation into allegations of child abuse, neglect, and abandonment. In early August 2005, Radke and her husband were living apart and meeting with caseworkers from the Department of Family Services in Dawson County, Montana. At that time, Radke was considering a move to either Miles City, Montana, or to North Dakota.

[¶8] On August 12, 2005, the North Dakota district court issued to the parties' attorneys another notice of intent to dismiss Harshberger's action. On August 23, 2005, Harshberger responded by resisting the dismissal and moving for an order holding Radke in contempt for violating the interim order, an order granting him further visitation with his daughter, or alternatively, an order granting him legal custody of the child. Harshberger alerted the court that Radke had been the subject of "numerous" Montana court orders and "there is now pending an Order to Show Cause hearing ... involving [Radke's] alleged failure to follow the mandates issued by the Montana Department of Family Services."

[¶9] On August 26, 2005, Radke and her family moved from Montana to Baldwin, North Dakota, and enrolled the three oldest of the five children in school. On September 8, 2005, the Montana Depart-

ment of Family Services petitioned the Montana district court to remove the children from the Radkes. On September 12, 2005, the Montana Department of Family Services, with the assistance of the Burleigh County Sheriff's Department, removed the children from North Dakota and placed them in foster care in Montana. On the same date, the North Dakota district court denied Harshberger's motion to amend the interim order and set the matter for trial so "the issues surrounding custody and child support [can] be resolved." Radke's current attorney entered an appearance, and on October 11, 2005, moved for a change of venue from Stark County to Burleigh County. On October 18, 2005, Harshberger's attorney informed the district court of the pending Montana court proceedings concerning Radke. On November 1, 2005, the North Dakota district court denied Radke's motion for change of venue because it "would only spawn mischief." On November 3, 2005, Radke moved for a continuance, which was also denied by the North Dakota court.

[¶ 10] On November 7, 2005, Radke, for the first time, moved to dismiss the action, asserting that none of the procedures under the UCCJEA had been followed. Radke requested that the North Dakota court communicate with the Montana court concerning the simultaneous actions. Following a November 8, 2005, hearing in which the North Dakota court orally granted Harshberger's motion for change of custody, Radke moved to vacate the oral decision, arguing the North Dakota court lacked subject matter jurisdiction under the UCCJEA to adjudicate Harshberger's change of custody motion. In its findings of fact, conclusions of law, and order for judgment, the district court concluded it had subject matter jurisdiction over the action because Radke and the child were residents of Stark County, North Dakota, when the action was begun

in 2001, and Radke was again a resident of North Dakota at the time of the November 8, 2005, hearing. The court found a material change of circumstances justifying a change of custody of the child from Radke to Harshberger. The record does not reflect that the North Dakota court ever communicated with the Montana court concerning the simultaneous proceedings involving Radke and the child.

[¶ 11] Radke's appeal from the judgment is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 12] Interstate custody disputes are governed by the UCCJEA, N.D.C.C. ch. 14–14.1, enacted in North Dakota in 1999, and the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A. The UCCJEA was designed to eliminate "dueling state custody proceedings." *In re Marriage of Iwed,* 34 Kan.App.2d 178, 116 P.3d 36, 38 (2005). Judicial cooperation is one of the methods intended to eliminate simultaneous proceedings, and the UCCJEA provides mechanisms for courts to cooperate with each other. *See* K.G. Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA),* 75 N.D. L.Rev. 301, 308 (1999); Uniform Child Custody and Enforcement Act § 112, Comment, 9 Uniform Laws Annotated 669 (Part IA 1999). The role of judicial communications is emphasized by N.D.C.C. § 14–14.1–09(1), which provides "[a] court of this state may communicate with a court in another state concerning a proceeding arising under this chapter." Although communication between courts is generally discretionary, it is required in certain situations. *See* N.D.C.C. § 14–

14.1–15(4) (court "shall immediately communicate with the other court" in situations involving temporary emergency jurisdiction); N.D.C.C. § 14–14.1–17(2) ("If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state"); N.D.C.C. § 14–14.1–27 (if a proceeding for enforcement is begun in this state and "the court determines that a proceeding to modify the determination is pending in a court of another state having jurisdiction to modify the determination . . ., the enforcing court shall immediately communicate with the modifying court"); *see also* Uniform Child Custody Jurisdiction and Enforcement Act § 110, Comment, 9 Uniform Laws Annotated 667 (Part IA 1999); *M.J.P. v. K.H.*, 923 So.2d 1114, 1117 (Ala.Civ.App.2005); *In re C.T.*, 100 Cal.App.4th 101, 121 Cal.Rptr.2d 897, 906 (2002); *In re Brode*, 151 N.C.App. 690, 566 S.E.2d 858, 862 (2002).

[¶ 13] Although the district court was informed that simultaneous proceedings involving Radke and the child were ongoing in Montana, and Radke specifically requested that the court communicate with the Montana court, there is no indication in the record that the district court ever attempted to communicate with the Montana court. Generally, a record must be made of communications between courts. *See* N.D.C.C. § 14–14.1–09(4); *see also Zimmerman v. Newton*, 1997 ND 197, ¶ 14, 569 N.W.2d 700 (under the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act, "[w]e also expect our North Dakota courts to communicate with courts of other states on the record to identify the more appropriate forum"). Communication between these courts might have prevented the contradictory custody awards—one granting custody to Harshberger and the other granting custody to foster care in Montana—which is the antithesis of what the UCCJEA was designed to accomplish.

## III

[¶ 14] The dispositive issue on appeal is whether the district court had subject matter jurisdiction of the parties' custody dispute under the provisions of the UCCJEA, N.D.C.C. ch. 14–14.1.

[¶ 15] Although the district court's decision emphasizes Radke's consent to the court's jurisdiction early in the proceedings and failure to object until after the hearing on Harshberger's motion to change custody, the UCCJEA establishes the criteria for deciding which state's courts have subject matter jurisdiction to make a child custody decision involving interstate custody disputes. *See, e.g.,* Uniform Child Custody Jurisdiction and Enforcement Act § 201, Comment, 9 Uniform Laws Annotated 673 (Part IA 1999); *J.T. v. A.C.*, 892 So.2d 928, 931 (Ala.Civ.App.2004); *In re Marriage of Pritchett*, 80 P.3d 918, 921 (Colo.Ct.App. 2003); *Schroeder v. Schroeder*, 658 N.W.2d 909, 911 (Minn.Ct.App.2003); *Foley v. Foley*, 156 N.C.App. 409, 576 S.E.2d 383, 385 (2003); *Seligman–Hargis v. Hargis,* 186 S.W.3d 582, 585 (Tex.App.2006); *cf. Catlin v. Catlin*, 494 N.W.2d 581, 585 (N.D. 1992) (a district court's subject matter jurisdiction to adjudicate an interstate child custody dispute is governed by the Uniform Child Custody Jurisdiction Act). Subject matter jurisdiction is the court's power to hear and decide the general subject involved in the action. *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 10, 580 N.W.2d 583. Subject matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject matter jurisdiction can be

raised by the court at any time. *Trottier v. Bird,* 2001 ND 177, ¶¶ 5–6, 635 N.W.2d 157; *see also Pritchett,* at 921 (mother did not waive jurisdictional objection by appearing at and participating in hearing); *Foley,* at 385 (father's signing consent order did not waive challenge to subject matter jurisdiction); *Hargis,* at 585 (mother could contest subject matter jurisdiction even though she had earlier agreed to trial court's jurisdiction); Uniform Child Custody Jurisdiction and Enforcement Act § 201, Comment, 9 Uniform Laws Annotated 673 (Part IA 1999) ("since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective"). Radke's consent to jurisdiction and belated assertion of the jurisdictional issue are simply irrelevant.

[¶ 16] When the jurisdictional facts are not in dispute, the question of subject matter jurisdiction is a question of law, and we review the jurisdiction decision de novo. *Rolette County Soc. Serv. Bd. v. B.E.,* 2005 ND 101, ¶ 6, 697 N.W.2d 333. The jurisdictional facts are not disputed in this case.

[¶ 17] The UCCJEA establishes priorities for home state jurisdiction and provides for exclusive, continuing jurisdiction in the state issuing the initial decree except under limited circumstances. *See Benson v. Benson,* 2003 ND 131, ¶ 7, 667 N.W.2d 582; David Carl Minneman, Annotation, *Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act,* 100 A.L.R.5th 1, 20 (2002). In *Benson,* at ¶ 8, this Court outlined the multi-step process a court must follow in interstate custody disputes to determine whether to exercise jurisdiction under the UCCJEA and the PKPA:

First, a court must determine whether it has jurisdiction, and, if it finds that it does, it then must determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, a court must follow the process in N.D.C.C. § 14–14.1–17 and PKPA § 1738A(g). A court may not modify a decree issued by another state, except as provided in N.D.C.C. § 14–14.1–14 and PKPA §§ 1738A(f) and (h). Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, the court may decline to exercise jurisdiction under N.D.C.C. § 14–14.1–18 on the basis of an inconvenient forum, and the court shall decline to exercise its jurisdiction under the provisions of N.D.C.C. § 14–14.1–19 if a person seeking to invoke the court's jurisdiction has engaged in unjustifiable conduct.

[¶ 18] Because the district court's judgment modifies the Montana divorce decree granting custody of the child to Radke, we are guided by the provisions of N.D.C.C. § 14–14.1–14, which state:

Except as otherwise provided in section 14–14.1–15 [temporary emergency jurisdiction], a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subdivision a or b of subsection 1 of section 14–14.1–12 and:

1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under section 14–14.1–13 or that a court of this state would be a more convenient forum under section 14–14.1–18; or

2. A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

[¶ 19] Subdivisions (a) and (b) of N.D.C.C. § 14–14.1–12(1) provide:

1. Except as otherwise provided in section 14–14.1–15 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

b. A court of another state does not have jurisdiction under subdivision a, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 14–14.1–18 or 14–14.1–19, and:

(1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

[¶ 20] For purposes of N.D.C.C. ch. 14–14.1, a "child custody determination" is defined as:

a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

N.D.C.C. § 14–14.1–01(2). An "initial determination" means "the first child custody determination concerning a particular child." N.D.C.C. § 14–14.1–01(7). A "modification" is defined as "a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." N.D.C.C. § 14–14.1–01(10). The term "home state" means:

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

N.D.C.C. § 14–14.1–01(6). "Commencement" is defined in N.D.C.C. § 14–14.1–01(4) as "the filing of the first pleading in a proceeding." A "child custody proceeding" means:

a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a

proceeding involving juvenile delinquency, contractual emancipation, or enforcement under sections 14–14.1–22 through 14–14.1–37.

N.D.C.C. § 14–14.1–01(3).

■ [¶ 21] Harshberger argues the district court had subject matter jurisdiction because his paternity action under N.D.C.C. ch. 14–17 constituted a "child custody proceeding" for purposes of N.D.C.C. § 14–14.1–01(3); his action was "commenced" for purposes of N.D.C.C. § 14–14.1–01(4) on March 20, 2001; at that time North Dakota was the "home state" under N.D.C.C. § 14–14.1–01(6) because Radke and the child had been living in North Dakota for more than six months prior to the March 20, 2001, commencement of the action; and neither the parties nor the child were residing in Montana. Therefore, Harshberger argues the requirements of N.D.C.C. § 14–14.1–14 have been satisfied because a North Dakota court had jurisdiction to make an initial child custody determination and neither the child nor her parents resided in Montana when the action began.

[¶ 22] We reject Harshberger's argument because his paternity action was not a "child custody proceeding" when it was initially begun on March 20, 2001. Under the Uniform Parentage Act, N.D.C.C. ch. 14–17, a judgment in a paternity action may contain provisions relating to child custody and visitation, see N.D.C.C. § 14–17–14(3), and the definition of "child custody proceeding" in N.D.C.C. § 14–14.1–01(3) specifically lists a "paternity" action as a proceeding in which custody and visitation issues "may appear." However, the definition of a "child custody proceeding" in N.D.C.C. § 14–14.1–01(3) begins with the requirement that it be "a proceeding in which legal custody, physical custody, or visitation with respect to a child *is an issue.*" (Emphasis added). Consequently,

courts have construed the UCCJEA as applying to paternity actions only when custody or visitation is an issue.

[¶ 23] In *Sanchez v. Fernandez,* 915 So.2d 192 (Fla.Dist.Ct.App.2005), a Florida trial court dismissed the mother's paternity action against the putative father for lack of subject matter jurisdiction under the UCCJEA. The putative father was a Florida resident, the child was born in Colombia, the mother and child resided in Colombia, and Florida was never the home state of the child. *Id.* at 192–93 n. 5. In the paternity action, the putative father agreed that the mother should be awarded permanent primary residency of the child. *Id.* at 193. The court held that the UCCJEA did not apply because custody was not an issue. *Id.* "[W]here the parties do not dispute that the mother shall retain custody of the minor child, custody is not an issue and, therefore, the UCCJEA does not prohibit Florida courts from maintaining subject matter jurisdiction over the paternity action." *Id.* (footnote omitted); *see also Greenhough v. Goforth,* 354 Ark. 502, 126 S.W.3d 345, 349 (2003) (UCCJEA applied in paternity action where appellant's petition also sought custody of the minor child, subject to reasonable visitation of respondent); *State ex rel. Lozano v. McCutcheon,* 2004 WL 574664 *1, 682 N.W.2d 83 (Iowa Ct.App. March 24, 2004) (Table) (an earlier paternity and support order which did not adjudicate custody or visitation was not an initial child custody determination under the UCCJEA and did not confer continuing jurisdiction on Iowa court to adjudicate custody and visitation rights; father's later application for visitation was the initial child custody determination triggering UCCJEA jurisdictional requirements). These cases are persuasive because they comport with the plain language of the UCCJEA's definition of "child custody proceeding."

[¶ 24] Harshberger's March 20, 2001, complaint sought only an order for genetic testing and a declaratory judgment adjudicating "whether Plaintiff Christopher Harshberger is in fact the biological father" of the child. Custody and visitation are not mentioned. Indeed, Harshberger's action was essentially a collateral attack on the parties' 1996 Montana divorce judgment naming him as the father of the child. The UCCJEA did not apply at that point. Custody and visitation did not become an issue in these proceedings until Harshberger moved to establish visitation rights with the child on April 30, 2004, which, in turn, triggered application of the UCCJEA jurisdictional provisions. On April 30, 2004, Radke and the child were residing, and had been residing for the previous 16 months, in Montana, and did not return to North Dakota until after Harshberger filed his August 23, 2005, motion for custody. During this time, Harshberger was residing in Oregon and Washington. Montana was the home state of the child under N.D.C.C. § 14–14.1–12(1)(a) and Mont.Code Ann. § 40–7–201(1)(a) (2005); a court could not find that the child or any of the parties did not presently reside in Montana under N.D.C.C. § 14–14.1–14(2); and the Montana court had not declined jurisdiction under either N.D.C.C. §§ 14–14.1–14(1) or 14–14.1–12(1)(b). To the contrary, Montana Family Services was at that time investigating child neglect and abuse reports against the Radkes in Montana under the authority of a Montana court order.

[¶ 25] Although Harshberger's March 20, 2001, complaint contained the boilerplate request "[f]or such other and further relief as this Court deems just and proper in the present action," this prayer for relief cannot be fairly characterized as a request for custody or visitation. Nor can it serve as the basis for treating the April 30, 2004, motion to establish visitation in the pending action as relating back to the filing of the March 20, 2001, complaint to artificially create a UCCJEA jurisdictional basis that did not, in fact, exist at the time the UCCJEA actually became applicable. *See In re A.C.S.*, 157 S.W.3d 9, 16 (Tex.App.2004) (father's April 2003 amended motion to modify custody and support did not relate back in time to his original December 2002 motion to modify only child support for purposes of determining subject matter jurisdiction under the UCCJEA).

[¶ 26] Under these undisputed facts, we conclude the district court lacked subject matter jurisdiction to decide Harshberger's April 30, 2004, motion to establish visitation rights and his August 23, 2005, motion for change of custody.

**IV**

[¶ 27] A judgment entered without subject matter jurisdiction is void. *Roe v. Doe*, 2002 ND 136, ¶ 6, 649 N.W.2d 566. The judgment is vacated.

[¶ 28] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.