2007 ND 80

**STATE of North Dakota by WORK-FORCE SAFETY & INSURANCE, Plaintiff and Appellee**

v.

**JFK RAINGUTTERS, a Limited Liability Company, and Frank Whitecalfe, Individually, Defendants and Appellants.**

**No. 20060196.**

Supreme Court of North Dakota.

June 7, 2007.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for plaintiff and appellee.

Thomas M. Disselhorst, Disselhorst Law Office, Bismarck, N.D., for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] JFK Raingutters, LLC ("JFK"), and Frank Whitecalfe appealed from a judgment awarding Workforce Safety and Insurance ("WSI") $93,414.28 in unpaid worker's compensation premiums, penalties, and interest. We conclude the district court had subject matter jurisdiction over WSI's action, and the court did not err in granting summary judgment. We affirm.

I

[¶ 2] Frank Whitecalfe is an enrolled member of the Three Affiliated Tribes and lives on the Fort Berthold Indian Reservation. In 1999, Whitecalfe filed with the Secretary of State articles of organization for JFK, a limited liability company which engaged in the business of constructing and installing rain gutters. To be eligible for Indian preference in employment under the Three Affiliated Tribes Tribal Employment Rights Ordinance ("TERO") in effect at the time, JFK was required to qualify as a "Certified Indian Contractor." TERO of the Fort Berthold Reservation, Chapter 7 (March 11, 1993). Under Chapter 7, Section 3(D) of the TERO, "Certified Indian Contractor" status would not be granted unless "[t]he firm ... provide[s] documentation, that all the required employer requirements; of unemployment insurance, workmen's compensation, withholding of federal tax and any other required taxes and insurances's [sic] are in effect, to be in operation in a lawful manner." The Three Affiliated Tribes do not have a workers compensation scheme.

[¶ 3] Whitecalfe applied to WSI for workers compensation coverage for JFK and listed himself as the sole owner of the company on the application. Whitecalfe reported that the business performed rain gutter installation on the Fort Berthold

Reservation as well as other locations in North Dakota and neighboring states. Although Whitecalfe originally paid JFK's quarterly workers compensation premiums, he eventually claimed that JFK had no employees and no payroll, and began paying the minimum quarterly payment to keep the account open.

[¶4] In July 2002, Job Service North Dakota received an application for unemployment benefits from a person who listed JFK as his former employer in Bismarck. Job Service ultimately determined that JFK had 16 workers employed and was liable for unemployment insurance contributions. Based on Job Service's information, WSI contacted Whitecalfe and requested JFK's annual payroll report. Whitecalfe eventually submitted a payroll report listing no employees from October 1, 2001, through September 30, 2002. WSI informed Whitecalfe that Job Service had identified 16 employees and he needed to submit further documentation or it would assume those 16 workers were employees. After Whitecalfe failed to respond, WSI informed him of his personal liability for the unpaid premiums. In response, Whitecalfe claimed JFK was exempt from paying workers compensation insurance premiums because its workers were not employees, but were independent contractors under tribal law who were referred to him by the TERO office. Whitecalfe also claimed most of JFK's work was performed within the exterior boundaries of the reservation or on trust lands, and that WSI had no jurisdiction and could not collect premiums for those projects. Whitecalfe conceded that some of JFK's work was performed off the reservation.

[¶5] In 2003, after WSI issued a non-compliance order finding that JFK and Whitecalfe owed unpaid workers compensation premiums, penalties, and interest, Whitecalfe requested an administrative hearing. He argued that JFK was not responsible for premiums on work performed by independent contractors and that WSI did not have jurisdiction over work performed on the reservation or on trust lands. Whitecalfe did not dispute that JFK was subject to North Dakota's workers compensation laws relating to work performed off the reservation. WSI sought discovery of JFK's payroll records and information on all projects performed by JFK during the relevant time period. Whitecalfe failed to comply with WSI's discovery requests, even after being ordered to do so by the administrative law judge ("ALJ"), and WSI moved for sanctions. The ALJ granted the motion for sanctions, holding that all workers used by JFK would be deemed employees rather than independent contractors and that Whitecalfe would be barred from presenting evidence at the administrative hearing that any of the work had been performed on the reservation or on trust lands. Following the administrative hearing, the ALJ found JFK and Whitecalfe were liable for the unpaid premiums, and WSI adopted the ALJ's recommendation. JFK and Whitecalfe appealed WSI's final order to the district court. When JFK and Whitecalfe took no further action, including failure to file a certified record, the district court dismissed the appeal. A final judgment was entered, and JFK and Whitecalfe did not appeal from that judgment.

[¶6] In June 2005, WSI commenced this collection action seeking recovery of the unpaid premiums, penalties, interest, and costs from JFK and Whitecalfe, and seeking to enjoin JFK from employing persons in hazardous employment within North Dakota until it had fully complied with North Dakota's workers compensation laws. JFK and Whitecalfe answered, again asserting that JFK's employees were independent contractors under tribal law and that the district court lacked juris-

diction to enforce WSI's attempt to impose workers compensation premiums, penalties, and other sanctions for work JFK performed on the reservation or on trust lands. The district court granted WSI's motion for summary judgment, concluding the court had subject matter jurisdiction over the action and the other issues raised by JFK and Whitecalfe were barred by administrative res judicata.

## II

[¶ 7] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for the prompt resolution of a controversy on the merits if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *State ex rel. N.D. Hous. Fin. Agency v. Center Mut. Ins. Co.*, 2006 ND 175, ¶ 8, 720 N.W.2d 425. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 4, 712 N.W.2d 828. Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Hild v. Johnson*, 2006 ND 217, ¶ 6, 723 N.W.2d 389. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. *Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc.*, 2006 ND 183, ¶ 17, 721 N.W.2d 43.

## III

[¶ 8] JFK and Whitecalfe argue the district court lacked subject matter jurisdiction over WSI's action to collect unpaid workers compensation premiums, penalties, and interest for any work that JFK performed on the reservation or on trust lands.

[¶ 9] "[W]henever we consider a case involving a member of an Indian tribe we are confronted with the issue of subject-matter jurisdiction." *Davis v. Director, N.D. Dep't of Transp.*, 467 N.W.2d 420, 422 (N.D.1991). Subject matter jurisdiction is the court's power to hear and decide the general subject involved in the action. *Harshberger v. Harshberger*, 2006 ND 245, ¶ 15, 724 N.W.2d 148. Subject matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject matter jurisdiction can be raised by the court at any time. *Id.*

[¶ 10] " 'Within Indian country state jurisdiction is preempted both by federal protection of tribal self-government and by federal statutes on other subjects relating to Indians, tribes, their property, and federal programs.' " *Winer v. Penny Enters., Inc.*, 2004 ND 21, ¶ 10, 674 N.W.2d 9 (quoting F. Cohen, *Handbook of Federal Indian Law* 349 (1982) (footnotes omitted)). "[T]his Court has consistently held that state courts have no jurisdiction over civil causes of action involving Indians, arising within the exterior boundaries of an Indian Reservation, unless a majority of the enrolled residents of the Reservation vote to accept jurisdiction." *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 600 (N.D.1983).

[¶ 11] The United States Supreme Court explained in *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (emphasis added), "*absent governing Acts of Congress*, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Congress has plenary authority to legislate for the Indian tribes in all matters, *see United States v. Wheeler*, 435

U.S. 313, 319, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *In re A.B.*, 2003 ND 98, ¶ 37, 663 N.W.2d 625, and "[t]he unique and limited sovereignty that Indian tribes retain is subject to complete defeasance by Congress." *State v. Hook*, 476 N.W.2d 565, 567 (N.D.1991).

[¶ 12] In 1936, Congress enacted 40 U.S.C. § 290, currently codified at 40 U.S.C. § 3172, which provides:

§ 3172. Extension of state workers' compensation laws to buildings, works, and property of the Federal Government

(a) Authorization of extension.—The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises, projects, buildings, constructions, improvements, or property are located.

(b) Limitation on relinquishing jurisdiction.—The Government under this section does not relinquish its jurisdiction for any other purpose.

(c) Nonapplication.—This section does not modify or amend subchapter I of chapter 81 of title 5.

[¶ 13] In *State ex rel. Indus. Comm'n v. Indian Country Enters., Inc.*, 130 Idaho 520, 944 P.2d 117 (1997), the Idaho Industrial Commission sued Indian Country Enterprises, Inc., and its owner to enjoin them from doing business and for statutory penalties for conducting business without providing workers compensation insurance for their employees. The business was located on the Coeur d'Alene Indian Reservation. *Id.* The business was not owned by the tribe, but the owner was a member of the tribe. *Id.* The trial court dismissed the action, concluding it lacked subject matter jurisdiction to decide the dispute. *Id.* The Idaho Supreme Court concluded its state courts had subject matter jurisdiction over an action to enforce Idaho's workers compensation laws against a tribal member operating a business on the reservation based on 40 U.S.C. § 290:

Pursuant to 40 U.S.C. § 290, Idaho's workers' compensation laws apply on land "owned or held by the United States of America by deed or act of cession, by purchase or otherwise." The right which Indians hold in reservation land is that of occupancy, the fee and right of disposition remains in the United States government. *Northwestern Bands of Shoshone Indians v. United States*, 324 U.S. 335, 338, 65 S.Ct. 690, 692, 89 L.Ed. 985 (1945); *Shoshone Tribe v. United States*, 299 U.S. 476, 496, 57 S.Ct. 244, 251, 81 L.Ed. 360 (1937). Therefore, the reservation is land "owned or held by the United States" and, under 40 U.S.C. § 290, Idaho's workers' compensation laws apply on the reservation.

Pursuant to 40 U.S.C. § 290, the Commission is empowered to enforce Idaho's workers' compensation laws "in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be." Because I.C. § 72–319(4) and (5) allows the Commission to bring an action in district court and 40 U.S.C. § 290 allows the Commission to enforce Idaho's workers' compensation laws in the "same way and to the same extent"

as if the reservation was within the boundaries of the state, the trial court had subject matter jurisdiction and erred in dismissing the case.

*Id.* at 118.

[¶ 14] Similarly, in *Begay v. Kerr–McGee Corp.*, 682 F.2d 1311 (9th Cir.1982), the Ninth Circuit Court of Appeals held that Arizona workers compensation law applied in an action by individual Indian miners against their employers for injuries received while employed at uranium mines on the Navajo reservation. The court concluded:

> The language of 40 U.S.C. § 290 unambiguously permits application of state workers' compensation laws to all United States territory within the state. Claims by Indians against non-Indian employers are not matters of "self-governance in purely intramural matters" sufficient to avoid the rule that Indians are subject to such federal laws of general application, *United States v. Farris*, 624 F.2d 890, 893 (9th Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981), and the exercise of state jurisdiction over such claims does not, even minimally, infringe upon or frustrate tribal self-government, *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 483, 96 S.Ct. 1634, 1646, 48 L.Ed.2d 96 (1976) (citing *Williams v. Lee, supra,* 358 U.S. at 219–20, 79 S.Ct. at 270).

*Id.* at 1319. *See also Johnson v. Kerr–McGee Oil Indus., Inc.,* 129 Ariz. 393, 631 P.2d 548, 551 (App.1981) (same).

[¶ 15] JFK and Whitecalfe rely on *White Mountain Apache Tribe v. Industrial Comm'n,* 144 Ariz. 129, 696 P.2d 223 (App.1985); *Middletown Rancheria of Pomo Indians v. Workers' Comp. Appeals Bd.,* 60 Cal.App.4th 1340, 71 Cal.Rptr.2d 105 (1998); *Tibbetts v. Leech Lake Reservation Bus. Comm.,* 397 N.W.2d 883

(Minn.1986); and *Zempel v. Uninsured Employers' Fund,* 282 Mont. 424, 938 P.2d 658 (1997), to support their assertion that 40 U.S.C. § 3172 is inapplicable to Indian lands. However, in *White Mountain, Middletown,* and *Tibbetts,* the employers were wholly-owned entities of the Indian *tribes,* and the courts concluded that the federal statute did not have the effect of abrogating the sovereign immunity of the *tribes* themselves. *See White Mountain,* 696 P.2d at 228 (40 U.S.C. § 290 did not abrogate tribal sovereign immunity); *Middletown,* 71 Cal.Rptr.2d at 115 (40 U.S.C. § 290 "does not operate as a congressional waiver of Tribe's sovereign immunity in this case and was not intended to apply state workers' compensation laws to Native American Indian *tribes* "); *Tibbetts,* 397 N.W.2d at 888 (40 U.S.C. § 290 "was never intended to apply to Indian tribes themselves"). The *Zempel* court did not mention 40 U.S.C. § 3172 or its predecessor.

[¶ 16] JFK and Whitecalfe argue *Indian Country* and *Begay* are distinguishable because the states in which those cases arose allow employers a choice of workers compensation insurers, while WSI operates as the sole insurer in North Dakota. They also rely on the TERO, which they claim is a "comprehensive scheme for applying Indian preference . . . on the reservation," and under which a tribal official has allegedly determined tribal members referred to JFK for employment are independent contractors.

■ [¶ 17] WSI's role as the sole provider of workers compensation insurance in North Dakota may be a distinction, but it is one without a legal difference. The number of workers compensation insurers available to employers is irrelevant to the question whether a state's workers compensation laws are applicable on an Indian reservation. Likewise, although the

TERO may be a "comprehensive" scheme for providing a preference in employment to Indians on work projects being conducted within the reservation, the TERO does not address the subject of workers compensation except to require that workers compensation is in effect and operating.

■ [¶ 18] The tribal sovereignty interests that concerned the courts in *White Mountain, Middletown,* and *Tibbetts* are not present here. JFK is not owned by the Three Affiliated Tribes, but is wholly owned by Whitecalfe, a member of the tribe. We agree with the Idaho Supreme Court's decision in *Indian Country* that, under these circumstances, 40 U.S.C. § 3172 makes a state's workers compensation laws applicable on an Indian reservation. *Cf. Airvator, Inc.,* 329 N.W.2d at 602, 604 ("state-chartered corporations should be treated as non-Indians independent of their percentage of Indian shareholders," and are "subject to the jurisdiction of the courts of the state in which [they are] incorporated").

[¶ 19] We conclude that North Dakota's workers compensation laws apply in this case, and the district court had subject matter jurisdiction over the action.

### IV

[¶ 20] JFK and Whitecalfe argue summary judgment was improperly granted because there are disputed issues of material fact whether JFK's workers were employees rather than independent contractors, and whether work was performed off or on the reservation.

[¶ 21] Because we have concluded that North Dakota's workers compensation laws apply on the reservation, the amount of work performed on or off the reservation is irrelevant and does not constitute a material issue of fact. Although the status of JFK's workers as employees or independent contractors remains relevant, we believe JFK and Whitecalfe are precluded from raising the issue in this proceeding.

■ [¶ 22] Administrative res judicata is simply the judicial doctrine of res judicata applied to an administrative proceeding to prevent collateral attacks on administrative agency decisions and to protect successful parties from duplicative proceedings. *Fuchs v. Moore,* 1999 ND 27, ¶ 6, 589 N.W.2d 902. Application of the doctrine is especially appropriate to bar new proceedings when an agency has conducted a trial-type hearing, made findings, and applied the law. *Id.* In *Gepner v. Fujicolor Processing, Inc.,* 2001 ND 207, ¶ 20, 637 N.W.2d 681, this Court explained:

Res judicata generally prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which were resolved by a final judgment in a court of competent jurisdiction. *Ohio Cas. Ins. Co. v. Clark,* 1998 ND 153, ¶ 23, 583 N.W.2d 377; *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380, 383 (N.D. 1992). Determinations by administrative agencies, including the Bureau, may likewise be given res judicata effect if the conventional elements of res judicata are present. *See Westman v. Dessellier,* 459 N.W.2d 545, 547 (N.D.1990); *Vanover v. Kansas City Life Ins. Co.,* 438 N.W.2d 524, 526 (N.D.1989); *Stine v. Weiner,* 238 N.W.2d 918, 925–26 (N.D. 1976); 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 127.07[2] & [5]. Under traditional res judicata principles, the doctrine is not applicable to issues not considered or decided in the prior proceeding, and the doctrine applies only when the issues in the prior and current proceedings are "substantially identical." *Nodland v. Nokota Co.,* 314 N.W.2d 89, 92

(N.D.1981); *see also Hofsommer,* 488 N.W.2d at 384 (under related doctrine of collateral estoppel, issues must be identical).

Administrative res judicata applies only to final agency orders. *Saakian v. North Dakota Workers Comp. Bureau,* 1998 ND 227, ¶ 17, 587 N.W.2d 166; *Muscatell v. North Dakota Real Estate Comm'n,* 546 N.W.2d 374, 379 (N.D.1996). Under N.D.C.C. § 65–05–03, a final WSI decision is entitled to full faith and credit. *Witcher v. North Dakota Workers Comp. Bureau,* 1999 ND 225, ¶ 17, 602 N.W.2d 704.

[¶ 23] Whether JFK's workers were employees rather than independent contractors is the precise issue decided by the ALJ in the prior administrative proceeding. That decision resulted in an unappealed judgment and became final. We conclude administrative res judicata precludes relitigation of the issue in this proceeding, and the district court did not err in granting WSI's motion for summary judgment.

V

[¶ 24] The judgment is affirmed.

[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.