# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 36

State of North Dakota, by and through

Workforce Safety and Insurance,                                    Appellee

     v.

Cherokee Services Group, LLC,

Cherokee Nation Government Solutions, LLC,

Cherokee Medical Services, LLC,

Cherokee Nation Technologies, LLC,

Steve Bilby and Hudson Insurance Company,                          Appellants


## No. 20200166


Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

JUDGMENT REVERSED; ADMINISTRATIVE ORDER AFFIRMED AND REINSTATED IN PART AND REMANDED IN PART.

Opinion of the Court by VandeWalle, Justice.

Lawrence E. King, Bismarck, ND, for appellants.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellees.

**VandeWalle, Justice.**

[¶1]   Cherokee Services Group, LLC; Cherokee Nation Government Solutions, LLC; Cherokee Medical Services, LLC; Cherokee Nation Technologies, LLC (collectively referred to as the "Cherokee Entities"); Steven Bilby; and Hudson Insurance Company ("Hudson Insurance") appealed from district court orders and a judgment reversing an administrative law judge's ("ALJ") order. The ALJ's order concluded the Cherokee Entities and Bilby are protected by tribal sovereign immunity and Workforce Safety and Insurance ("WSI") had no authority to issue a cease and desist order to Hudson Insurance. The district court reversed the ALJ's determination. We reverse the district court judgment. We affirm and reinstate the ALJ's order related to the cease and desist power of WSI, but we remand to the ALJ for further proceedings on the issue of sovereign immunity.

I

[¶2]   The Cherokee Entities are wholly owned by the Cherokee Nation, a federally recognized tribe. Bilby served as executive general manager of the Cherokee Entities. Hudson Insurance provides worldwide workers' compensation coverage to Cherokee Nation, and the Cherokee Entities are named insureds on the policy. WSI initiated an administrative proceeding against the Cherokee Entities, Bilby, and Hudson Insurance. WSI determined the Cherokee Entities were employers subject to North Dakota's workers' compensation laws and were liable for unpaid workers' compensation premiums. WSI also ruled that Bilby, as executive general manager, was personally liable for unpaid premiums. WSI ordered the Cherokee Entities to pay the unpaid premiums. WSI also ordered Hudson Insurance to cease and desist from writing workers' compensation coverage in North Dakota. The Cherokee Nation has no sovereign land in North Dakota, and the Cherokee Entities were operating within the state but not on any tribal lands.

1

[¶3]   After WSI issued its order, the Cherokee Entities, Bilby, and Hudson Insurance requested an administrative hearing. At the hearing, WSI's collections supervisor, Sarah Feist, did not dispute that the Cherokee Entities acted as an "arm of the tribe." The ALJ reversed WSI's decision. The ALJ found the Cherokee Entities had sovereign immunity in the area of workers' compensation, and Bilby was not foreclosed from asserting sovereign immunity as he was sued in his official capacity. Additionally, the ALJ held WSI had no authority to issue cease and desist orders to insurance companies.

[¶4]   WSI appealed the ALJ's order to the district court. The Cherokee Entities, Bilby, and Hudson Insurance removed the case to federal court, but the federal court remanded the case back to the state district court. The state district court held the Cherokee Entities and Bilby were not entitled to sovereign immunity. The court also held WSI has authority to issue a cease and desist order to Hudson Insurance.

II

[¶5]   "Courts exercise only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32." *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178. Under N.D.C.C. §§ 28-32-46 and 28-32-49, a district court and this Court must affirm an administrative decision unless:

1.   The order is not in accordance with the law.
2.   The order is in violation of the constitutional rights of the appellant.
3.   The provisions of [N.D.C.C. ch. 28-32] have not been complied with in the proceedings before the agency.
4.   The rules or procedure of the agency have not afforded the appellant a fair hearing.
5.   The findings of fact made by the agency are not supported by a preponderance of the evidence.
6.   The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Bergum*, at ¶ 8.

[¶6]   This Court reviews "the administrative agency's decision in the same manner as the district court, giving due respect to the district court's analysis and review." *Bergum*, 2009 ND 52, ¶ 8. "We do not give deference to the ALJ's legal conclusions, and questions of law are fully reviewable on appeal." *Johnson v. N.D. Workforce Safety & Ins.*, 2012 ND 27, ¶ 9, 812 N.W.2d 467. "Regarding review of an agency's factual findings, we have explained we do not make independent findings or substitute our judgment for that of the agency, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record." *N.D. Sec. Comm'r v. Juran & Moody, Inc.*, 2000 ND 136, ¶ 23, 613 N.W.2d 503.

## III

[¶7]   The Cherokee Entities argue Cherokee Nation is entitled to tribal sovereign immunity and the sovereign immunity extends to the Cherokee Entities as "arms of the tribe." The Cherokee Entities claim tribal sovereign immunity precludes WSI from enforcing workers' compensation laws against them. "[T]ribal sovereign immunity is a threshold jurisdictional question." *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 684-85 (8th Cir. 2011). However, "the jurisdictional nature of tribal immunity has never been definitively settled." *People v. Miami Nation Enters.*, 386 P.3d 357, 370 (Cal. 2016) (concluding some courts treat tribal sovereign immunity as a subject matter jurisdiction issue while others treat it as a personal jurisdiction issue); *see also In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir. 1994) (holding tribal sovereign immunity is separate from subject matter jurisdiction

as it can be waived while subject matter jurisdiction cannot). Regardless of the jurisdictional nature, tribal sovereign immunity bars an action against a tribe when it is invoked. *See Miami Nation Enters.*, at 370 (stating trial courts do not have a sua sponte duty to raise tribal immunity).

A

[¶8] Cherokee Nation must possess tribal sovereign immunity as a prerequisite for it to extend to the Cherokee Entities. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). "This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But 'without congressional authorization,' the 'Indian Nations are exempt from suit.'" *Id.* (quoting *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940)). Congress can use its plenary power to waive tribal sovereign immunity; however, this waiver "cannot be implied but must be unequivocally expressed." *Id.* (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Additionally, a tribe can waive its sovereign immunity on its own accord. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).

[¶9] Tribal sovereign immunity "applies no less to suits brought by States (including in their own courts) than to those by individuals." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014). The United States Supreme Court has made clear on more than one occasion that tribes are entitled to sovereign immunity even when they engage in off-reservation commercial activity. *Id.* at 790, 803; *see also Kiowa*, 523 U.S. at 760 (analyzing a contract dispute). The Court deferred to Congress on whether such exceptions for off-reservation commercial activity should be made. *Bay Mills*, at 790, 800-01.

[¶10] A state may apply its substantive law to tribal activities occurring within the state. *Kiowa*, 523 U.S. at 755. However, the state has no remedy to enforce the law against a tribe without a waiver of tribal sovereign immunity. *Id.* The United States Supreme Court has said:

4

> To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit. In *Potawatomi,* for example, we reaffirmed that while Oklahoma may tax cigarette sales by a Tribe's store to nonmembers, the Tribe enjoys immunity from a suit to collect unpaid state taxes. There is a difference between the right to demand compliance with state laws and the means available to enforce them.

*Id.* (citations omitted) (citing *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510, 514 (1991)).

[¶11] WSI and the district court conflate the defense of sovereign immunity with a tribe's sovereignty to adjudicate certain disputes occurring on tribal lands, but these two concepts are different. For purposes of sovereign immunity, it is immaterial where the conduct by the tribe took place, unless an act of Congress or waiver says otherwise. *Kiowa*, 523 U.S. at 754-55. A tribe is entitled to invoke sovereign immunity as a defense in a lawsuit. *Id.* Here, Cherokee Nation is entitled to invoke its tribal sovereign immunity against a lawsuit—even one brought by the State.

[¶12] WSI points to no act of Congress waiving Cherokee Nation's sovereign immunity. Additionally, WSI does not assert Cherokee Nation waived its sovereign immunity on its own accord. The ALJ and the district court made no findings that a waiver exists here. The State can apply its laws to Cherokee Nation. *See Kiowa*, 523 U.S. at 755. However, Cherokee Nation can assert sovereign immunity as a defense. *See id.* Therefore, the State has no means to enforce its laws against Cherokee Nation absent a waiver of tribal sovereign immunity. The analysis then turns to whether Cherokee Nation's tribal sovereign immunity extends to the Cherokee Entities.

B

[¶13] Determining whether a business entity shares a tribe's sovereign immunity involves a mixed question of fact and law. *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1148 (10th Cir. 2012); *see also Miami Nation Enters.*, 386 P.3d at 371 (placing the burden of proof on the entity

5

claiming tribal sovereign immunity by a preponderance of the evidence). Extending tribal sovereign immunity from Cherokee Nation to the Cherokee Entities requires analyzing the characteristics of the businesses. *See State ex rel. Workforce Safety & Ins. v. JFK Raingutters*, 2007 ND 80, ¶¶ 15, 18, 733 N.W.2d 248 (holding sovereign immunity does not extend to a business when it is owned by a member of the tribe and not the tribe itself); *cf. Leadbetter v. Rose*, 467 N.W.2d 431, 432-34 (N.D. 1991) (applying a test to analyze whether the University of North Dakota qualified as an arm of the State for the purpose of sovereign immunity in a tort action), *overruled by Bulman v. Hulstrand Constr. Co., Inc.*, 521 N.W.2d 632, 639 (N.D. 1994) (holding the State of North Dakota's sovereign immunity for tort actions was a common-law protection, not a constitutional one, and judicially abolishing it except for discretionary tortious acts).

[¶14] WSI claims the Cherokee Entities can only assert sovereign immunity when they operate on tribal lands and qualify as Indian persons under the law or employ tribal citizens. Again, these distinctions are important when analyzing whether the proper jurisdiction over a dispute rests with the state or the tribal courts. *See generally Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596 (N.D. 1983) (examining a corporation incorporated under North Dakota law operating on the Turtle Mountain Indian Reservation); *Arrow Midstream Holdings, LLC v. 3 Bears Constr., LLC*, 2015 ND 302, 873 N.W.2d 16 (examining a North Dakota limited liability company operating on the Fort Berthold Indian Reservation); *see also JFK Raingutters*, 2007 ND 80, ¶ 18 (holding the state courts had jurisdiction over a corporation organized under state law operating on tribal lands). However, the law makes no similar requirements for an arm of the tribe to assert the sovereign immunity defense in a state court action. Only Congress, through use of its plenary power, or a waiver by the arm of the tribe can confine tribal sovereign immunity to actions occurring on tribal lands. *See Kiowa*, 523 U.S. at 754-55. WSI points to no act of Congress or tribal waiver that would confine the sovereign immunity defense asserted by the Cherokee Entities to conduct occurring on tribal lands.

6

[¶15] We have previously concluded state chartered corporations and businesses owned by tribal members are not arms of the tribe. *See JFK Raingutters*, 2007 ND 80, ¶ 18 (holding a limited liability company organized under North Dakota law and owned by a tribal member was not an arm of the tribe and sovereign immunity did not extend to it). As indicated by this Court and the Tenth Circuit, a court should first look to where a business was created and under what sovereign's laws. *See Arrow*, 2015 ND 302, ¶ 16 (quoting *Am. Prop. Mgmt. Corp. v. Superior Court*, 141 Cal. Rprt. 3d 802, 810-11 (Cal. Ct. App. 2012), *abrogated by Miami Nation Enters.*, 386 P.3d 357) ("creation of a separate legal entity pursuant to *state law*, rather than tribal law, weighs heavily against a finding that an entity related to an Indian tribe is an arm of the tribe protected by sovereign immunity"); *see also Somerlott*, 686 F.3d at 1149. When a tribal entity subjects itself to a state by organizing under the state's laws, it waives sovereign immunity. *Somerlott*, at 1149-50; *see also* N.D.R.Civ.P. 4(b)(1) (granting personal jurisdiction to North Dakota courts over persons organized under North Dakota law). However, WSI concedes the Cherokee Entities are not organized under North Dakota law. Instead, WSI stated the Cherokee Entities are organized under the laws of Cherokee Nation. As a result, a detailed analysis to determine whether an entity qualifies as an arm of the tribe becomes necessary.

[¶16] An analysis to determine if the Cherokee Entities qualify as arms of Cherokee Nation requires examining the entities in more detail. *Breakthrough Mgmt. Grp., Inc. v. Chuckchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010). Beyond analyzing where a business is organized, we have not previously adopted a test to determine whether a business is acting as an arm of the tribe. *See Arrow*, 2015 ND 302, ¶ 16.

[¶17] The Eighth Circuit Court of Appeals has held corporations created and controlled by Indian tribes are subject to sovereign immunity when they act "as an arm of the tribe and not as a mere business." *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000). In *Hagen*, the Eighth Circuit examined whether a community college was an arm of a tribe. *Id.* The court considered whether the college was chartered, funded, and

7

controlled by the tribe when it concluded the college acted as an arm of the tribe. *Id.* However, the court did not adopt a comprehensive test to determine whether an entity qualifies as an arm of the tribe. *See id.*; *see also Amerind Risk Mgmt. Corp.*, 633 F.3d at 685 (holding, without creating a test, that a tribal agency created as an "incorporated tribe" under federal law is an arm of the tribe).

[¶18] Other courts have adopted extensive tests to determine if routine types of businesses qualify as arms of the tribe. These tests are typically referred to as variations on the "subordinate economic entity" analysis, which originated in Arizona state courts. *Somerlott v. Cherokee Nation Distribs., Inc.*, No. CIV-08-429-D, 2010 WL 1541574, at *3 n. 1 (W.D. Okla. Apr. 16, 2010).

[¶19] In *Breakthrough Management Group, Inc. v. Chuckchansi Gold Casino and Resort*, the Tenth Circuit Court of Appeals adopted a non-exhaustive six-part test to determine whether a tribal entity qualifies as an arm of the tribe. 629 F.3d at 1187; *see also Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019). The test examines:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; . . . (5) the financial relationship between the tribe and the entities . . . [(6)] the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether these policies are served by granting immunity to the economic entities.

*Breakthrough*, at 1187. The Fourth and Ninth Circuit Courts of Appeal have also adopted this test in whole or part. *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014) (adopting the first five criteria); *Williams*, at 177 (adopting all six criteria).

[¶20] The test articulated by the Tenth Circuit Court of Appeals allows a comprehensive examination to determine whether the nature of a business qualifies it as an arm of the tribe. We adopt it to analyze this issue. The ALJ

8

found the Cherokee Entities are wholly owned by Cherokee Nation. This finding addresses only the first step of the test. However, we are left without findings to address the remaining five criteria. Therefore, we reverse the judgment of the district court on this issue. We remand to the ALJ to make further findings, consider the factors given in the test, and determine whether the Cherokee Entities qualify as an arm of Cherokee Nation entitled to sovereign immunity.

IV

[¶21] WSI sought to hold Bilby personally liable under N.D.C.C. § 65-04-26.1 for unpaid workers' compensation premiums, penalties, interest, and costs. Bilby argues under *Lewis v. Clarke* sovereign immunity extends to him as an employee of the Cherokee Entities because he was acting in his official capacity. 137 S.Ct. 1285, 1290-91 (2017) (holding "[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))). WSI argues Bilby can be held liable under N.D.C.C. § 65-04-26.1 because the statute explicitly states the lawsuit can be brought against Bilby in his personal capacity. *But see Lewis*, 137 S.Ct. at 1290 ("[C]ourts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign."); *Wright v. Prairie Chicken*, 1998 SD 46, ¶ 12, 579 N.W.2d 7 ("The defense of sovereign immunity may not be evaded simply by suing officers in their individual capacity.").

[¶22] "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." *Zajac v. Traill Cty. Water Res. Dist.*, 2016 ND 134, ¶ 6, 881 N.W.2d 666 (citing N.D.C.C. § 1-02-02). "If the language of the statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.'" *Id.* (quoting N.D.C.C. § 1-02-05). Section 65-04-26.1(1), N.D.C.C., states:

9

[A] manager or governor of a limited liability company . . . who has control of or supervision over the filing of and responsibility for filing premium reports or making payment of premiums or reimbursements under this title and who fails to file the reports or to make payments as required, is personally liable for premiums under this chapter and reimbursement under section 65-04-04.4, including interest, penalties, and costs *if the corporation or limited liability company does not pay to the organization those amounts for which the corporation or limited liability company is liable.*

(Emphasis added.)

[¶23] The plain language of N.D.C.C. § 65-04-26.1(1) requires a corporation or limited liability company to be liable in the first instance in order for that liability to extend to a manager or governor of the limited liability company. As a result, Bilby's liability under N.D.C.C. § 65-04-26.1(1) is dependent on whether the Cherokee Entities are liable for "those amounts" to WSI. If the Cherokee Entities are arms of the tribe and immune from WSI's claim, they cannot be held liable for the premiums or reimbursements.

[¶24] Although Bilby argues he is also entitled to sovereign immunity under *Lewis v. Clarke*, the text of N.D.C.C. § 65-04-26.1 shields him from liability if the Cherokee Entities are not liable. Bilby's personal liability relies on the outcome of the analysis to determine if the Cherokee Entities qualify as arms of the tribe. If the Cherokee Entities are acting as arms of the tribe entitled to sovereign immunity, they cannot be held liable under the statute and would not be liable for "those amounts." By extension, Bilby could not be held personally liable for an amount the Cherokee Entities are not liable for under the statute. Alternatively, if the Cherokee Entities are not protected by sovereign immunity, they can be held liable and Bilby can be held liable under this statute. Therefore, we reverse the district court judgment on this issue. We remand to the ALJ to reach a determination on Bilby's liability under N.D.C.C. § 65-04-26.1 once the analysis of the Cherokee Entities is completed.

## V

[¶25] WSI argues it has the authority to issue a cease and desist order to Hudson Insurance. An employer's participation in North Dakota's workers' compensation program is mandatory. N.D.C.C. § 65-04-33(1). However, Title 65 only grants WSI the ability to issue cease and desist orders to employers when they operate without workers' compensation coverage or are in an uninsured status. N.D.C.C. § 65-04-27.2(1); *see generally* N.D.C.C. tit. 65.

[¶26] Section 65-04-27.2(1), N.D.C.C., states, "If it appears to the organization an employer is without workers compensation coverage or is in an uninsured status in violation of this title, by registered mail the director may issue *to the employer* an order to cease and desist and a notice of opportunity for hearing." (Emphasis added.) The language of N.D.C.C. § 65-04-27.2(1) does not allow WSI to issue cease and desist orders to insurance companies because they provided coverage to an employer.

[¶27] WSI ordered Hudson Insurance to "cease and desist from writing workers compensation coverage in the state of North Dakota." However, this action exceeds the scope of the cease and desist authority granted to WSI by statute. WSI has provided no statutory authority allowing it to order insurance companies to cease and desist from writing coverage. Therefore, we reverse the district court judgment on this issue. We affirm and reinstate that part of the ALJ's order finding WSI had no authority to issue a cease and desist order to Hudson Insurance.

## VI

[¶28] Cherokee Nation is entitled to sovereign immunity. Whether this sovereign immunity extends to the Cherokee Entities and shields them from liability for the unpaid premiums relies on an analysis determining if the entities are arms of the tribe. If the Cherokee Entities are liable, WSI can hold Bilby personally liable under N.D.C.C. § 65-04-26.1. If the Cherokee Entities are not liable due to sovereign immunity, WSI cannot hold Bilby personally liable for the unpaid premiums. Additionally, WSI does not have the statutory authority to issue a cease and desist order to Hudson Insurance. We reverse

11

the district court judgment. We affirm and reinstate the ALJ's order related to the cease and desist power of WSI. We remand to the ALJ for further proceedings on the sovereign immunity and personal liability of Bilby issues.

[¶29] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte