2015 ND 302

**ARROW MIDSTREAM HOLDINGS, LLC, Arrow Pipeline, LLC, Plaintiffs, Appellants, and Cross–Appellees**

v.

**3 BEARS CONSTRUCTION, LLC, Defendant, Appellee, and Cross–Appellee**

and

**Tesla Enterprises, LLC, Defendant, Appellee, and Cross–Appellant.**

No. 20150057.

Supreme Court of North Dakota.

Dec. 29, 2015.

Monte L. Rogneby (argued) and Diane M. Wehrman (on brief), Bismarck, ND and Caren W. Stanley (on brief), Fargo, ND, for plaintiffs, appellants, and cross-appellees.

John Fredericks (argued), Mandan, ND and Thomas W. Fredericks (on brief), Louisville, CO, for defendant, appellee, and cross-appellee 3 Bears Construction, LLC.

Thomas M. Disselhorst, Bismarck, ND, for defendant, appellee, and cross-appellant Tesla Enterprises.

VANDE WALLE, Chief Justice.

[¶ 1] Arrow Midstream Holdings, LLC and Arrow Pipeline, LLC (collectively "Arrow") appealed, and Tesla Enterprises, LLC ("Tesla") cross-appealed, from a judgment dismissing without prejudice for lack of jurisdiction its action against 3 Bears Construction, LLC ("3 Bears") and Tesla for breach of contract and a declara-

tion that Tesla's pipeline construction lien is invalid. We reverse and remand, concluding the district court has jurisdiction over this lawsuit.

## I

[¶ 2] In 2013, Arrow, a Delaware limited liability company, hired 3 Bears, a North Dakota limited liability company, to be the general contractor for the construction of a pipeline located on a right-of-way easement acquired by Arrow from the Bureau of Indian Affairs over Indian trust land on the Fort Berthold Indian Reservation. *See* 25 U.S.C. §§ 321 and 323. The easement was "for the purpose of installing oil, gas and water lines" and described the right-of-way as "11,882.77 feet in length and 13.520 acres in area (34.206 acres during construction), more or less, ... and shall be buried a sufficient depth below the surface of the land so as not to interfere with cultivation." 3 Bears, which has its principal place of business in New Town, entered into a subcontract with Tesla, an Alaska limited liability company, to supply materials and labor for the construction. 3 Bears is owned by two members of the Three Affiliated Tribes ("Tribe") and is certified under the Tribal Employment Rights Ordinance ("TERO"). 3 Bears claims Arrow was a covered employer who was required to comply with TERO rules.

[¶ 3] After the pipeline was completed, a dispute arose between 3 Bears and Tesla concerning amounts Tesla claimed it was owed by 3 Bears for work Tesla performed. In mid–2014, Tesla sent Arrow a notice of right to file a pipeline lien under N.D.C.C. ch. 35–24. Tesla recorded the pipeline lien against Arrow in the Dunn County recorder's office in June 2014. In July 2014, Arrow commenced this action in state district court challenging the validity of the pipeline lien, seeking indemnifica-

tion, and claiming 3 Bears breached the parties' contract. In August 2014, 3 Bears moved to dismiss for lack of subject matter jurisdiction. In November 2014, 3 Bears filed a complaint against Tesla and Arrow in Fort Berthold Tribal Court. 3 Bears sought a declaration that the pipeline lien was invalid, alleged Arrow had breached the master service contract, and requested an award of damages.

[¶ 4] In December 2014, the state district court agreed with 3 Bears' argument that it lacked subject matter jurisdiction over the lawsuit. The court concluded "exercising jurisdiction over this action under the circumstances presented here would infringe upon Tribal sovereignty." The court further concluded, "at the very least, Arrow and Tesla, as a matter of comity, should be required to exhaust their tribal court remedies before this Court exercises jurisdiction." The court dismissed the action "without prejudice to allow any of the parties to re-open the case without payment of another filing fee should it become necessary for purposes of enforcing the Tribal Court action or for any other reason."

## II

[¶ 5] 3 Bears argues this Court lacks jurisdiction to hear the appeal because the district court dismissed the action without prejudice.

[¶ 6] "Before we consider the merits of an appeal, we must have jurisdiction." *Choice Fin. Grp. v. Schellpfeffer*, 2005 ND 90, ¶ 6, 696 N.W.2d 504. The situation here is similar to the circumstances in *Winer v. Penny Enters., Inc.*, 2004 ND 21, ¶¶ 1, 4–5, 674 N.W.2d 9, in which the district court dismissed without prejudice for lack of subject matter jurisdiction an action brought by a non-Indian plaintiff against Indian defendants for damages resulting from a motor vehicle

accident occurring on a state highway on an Indian reservation. Concluding this Court had jurisdiction over the appeal, we explained:

> Ordinarily, an order dismissing a complaint without prejudice is not appealable because either side may commence another action after the dismissal. *State v. Gwyther*, 1999 ND 15, ¶ 10, 589 N.W.2d 575. However, a dismissal without prejudice may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum. *Rodenburg v. Fargo-Moorhead YMCA*, 2001 ND 139, ¶ 12, 632 N.W.2d 407; *Triple Quest, Inc. v. Cleveland Gear Co.*, 2001 ND 101, ¶ 8, 627 N.W.2d 379. In this case, the order and judgment effectively foreclose litigation of Winer's action in the courts of this state. Consequently, we conclude the dismissal is appealable.

*Id.* at ¶ 6.

[¶ 7] We likewise conclude in this case that the judgment dismissing the action without prejudice is appealable.

### III

[¶ 8] Arrow argues the district court erred in concluding it lacked jurisdiction, and the Fort Berthold Tribal Court had exclusive jurisdiction, to decide the validity of the pipeline lien and the parties' contractual disputes.

[¶ 9] There is no dispute about the facts relevant to a determination of the jurisdictional issue in this case. " 'When the jurisdictional facts are not in dispute, the question of subject-matter jurisdiction is a question of law, and we review the jurisdiction decision de novo.' " *Gustafson v. Estate of Poitra*, 2011 ND 150, ¶ 9, 800 N.W.2d 842 (quoting *Rolette Cty. Soc. Serv. Bd. v. B.E.*, 2005 ND 101, ¶ 6, 697 N.W.2d 333).

[¶ 10] While tribal court jurisdiction is determined under the test set forth in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), state court jurisdiction is determined under the test set forth in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *See Winer*, 2004 ND 21, ¶ 16, 674 N.W.2d 9. In *Cohen's Handbook of Federal Indian Law*, § 6.03[2][c], at pp. 528–29 (Nell Jessup Newton ed., 2012) (footnotes omitted), the authors explain:

> State jurisdiction and tribal jurisdiction in Indian country raise two separate legal questions. For example, if application of the *Montana* test results in a finding that a tribe lacks jurisdiction over a non-Indian on non-Indian land in Indian country, it does not necessarily follow that the state can enter Indian country and impose its laws by prosecuting or controlling the non-Indian behavior. Whether state law can apply in Indian country remains subject to the *Williams* test, even as the *Montana* analysis considers whether tribal authority is necessary to protect vital tribal interests. How that preemption/infringement test is applied, however, may take into account, as one factor, the absence of tribal jurisdiction. Thus, for example, in *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, [467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984),] the Court considered the tribes' decision not to assert jurisdiction over suits against non-Indians, together with the fact that the tribes themselves sought to invoke the state court's jurisdiction, as weighing in favor of state authority over those actions.

*See also Winer*, 2004 ND 21, ¶¶ 13–18, 674 N.W.2d 9 (declining to apply Supreme Court precedent interpreting *Montana* in case involving state court jurisdiction).

[¶ 11] We analyze the jurisdictional question with these principles in mind.

### A

[¶ 12] Generally, "absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation." *Strate v. A–1 Contractors*, 520 U.S. 438, 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In *Montana*, 450 U.S. at 565–66, 101 S.Ct. 1245 (citations omitted), the United States Supreme Court explained the two exceptions to the general rule:

> [T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.... A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

[¶ 13] The district court ruled the first *Montana* exception on consensual relationships between nonmembers and tribal members did not apply because, although 3 Bears is owned by two tribal members, 3 Bears is a limited liability company organized under North Dakota law, *see* N.D.C.C. ch. 10–32.1, and therefore, 3 Bears is not a member of the Tribe.

[¶ 14] The district court's conclusion on the first *Montana* exception is supported by this Court's decision in *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596 (N.D.1983). In that case, Airvator brought a breach of contract action in state court against a corporation incorporated under North Dakota law in which 51 percent of the corporation's stock was held by Indians. *Id.* at 597. The district court dismissed the action for lack of subject matter jurisdiction because the majority of the corporation's stockholders were Indian and the major part of the contract was to be performed on the reservation. *Id.* at 598. This Court reversed, noting "a corporation is an entity distinct and separate from its shareholders, directors, officers, and agents," and concluded "state-chartered corporations should be treated as non-Indians independent of their percentage of Indian shareholders." *Id.* at 602, 603.

[¶ 15] 3 Bears argues *Airvator* was wrongly decided and relies on caselaw it claims establishes that the form in which a tribe or its members conduct business is irrelevant for jurisdictional purposes. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157 n. 13, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) ("the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business"); *Confederated Tribes of the Chehalis Reservation v. Thurston Cty. Bd. of Equalization*, 724 F.3d 1153, 1157 (9th Cir.2013) (relying on *Mescalero*, court noted "the question of immunity ... 'cannot be made to turn on' the Tribe's decision to give ownership of the Lodge to its limited liability company for the duration of the lease"). 3 Bears also contends a limited liability company is a hybrid legal structure that provides the limited liability features of a corporation and the tax treatment and operational flexibility of a partnership, and therefore differs significantly

from a corporation. *See* N.D.C.C. § 10–32.1–08 (limited liability company has capacity to sue and be sued in own name); N.D.C.C. § 10–32.1–26(1) and (3) (although debts and obligations of limited liability company are not those of its members, its corporate veil may be pierced to hold members personally liable in same manner as a corporation); *Intercept Corp. v. Calima Fin., LLC,* 2007 ND 180, ¶ 14, 741 N.W.2d 209 (same). 3 Bears relies on *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 829 (8th Cir.2004), in which the court held "an LLC's citizenship is that of its members for diversity jurisdiction purposes."

[¶ 16] 3 Bears' arguments are not persuasive. First, *Mescalero* and *Confederated Tribes* concerned tax immunity under specific provisions of federal law for permanent improvements on land owned by the United States and held in trust for Indians, and *GMAC* did not involve a question of Indian jurisdiction. Second, the *Mescalero* Court's comment was made in the context of whether the tribe had incorporated itself as an Indian chartered corporation under 25 U.S.C. § 477. Third, relevant caselaw disregards the differences between corporations and limited liability companies for purposes of determining Indian jurisdiction. *See, e.g., Somerlott v. Cherokee Nation Distribs., Inc.,* 686 F.3d 1144, 1149–50 (10th Cir.2012) (tribal limited liability company organized under state law rather than tribal law was not entitled to tribe's immunity); *Fed. Trade Comm'n v. Payday Fin., LLC,* 935 F.Supp.2d 926, 936–37 (D.S.D.2013) (limited liability company owned by tribal member but organized under state law would not meet the first *Montana* exception concerning consensual relationships with the tribe or its members); *Am. Prop. Mgmt. Corp. v. Superior Court,* 206 Cal.App.4th 491, 141 Cal. Rptr.3d 802, 810–11 (2012) ("U.S. Grant, LLC's status as a California limited liabili-ty company weighs heavily in favor of finding it subject to the jurisdiction of California courts, regardless of its relationship to the Sycuan tribe"); *Seaport Loan Prods., LLC v. Lower Brule Cty. Dev. Enter., LLC,* 2013 WL 5779031 *4 (N.Y.Sup.Ct., Oct. 22, 2013) (limited liability company organized under state law was not an arm of the tribe). Indeed, the court in *Am. Prop. Mgmt. Corp.,* 141 Cal.Rptr.3d at 810, relied on the "North Dakota Supreme Court's long-standing opinion in *Airvator* " for the proposition that "creation of a separate legal entity pursuant to *state law,* rather than tribal law, weighs heavily against a finding that an entity related to an Indian tribe is an arm of the tribe protected by sovereign immunity." *See also State ex rel. Workforce Safety & Ins. v. JFK Raingutters,* 2007 ND 80, ¶ 13, 733 N.W.2d 248. The caselaw establishes it is not the particular form of business entity used by a tribe or tribal member, but whether the business entity was created under tribal law or state law that determines if the business entity should be treated as a tribe or tribal member.

[¶ 17] 3 Bears is a limited liability company formed under North Dakota law and is not a member of the Tribe. The district court did not err in concluding the first *Montana* exception did not apply because there was no consensual relationship between nonmembers and "the tribe or its members."

**B**

[¶ 18] The district court determined the second *Montana* exception applied to give the tribal court jurisdiction because "exercising jurisdiction over this action under the circumstances presented here would infringe upon Tribal sovereignty." The court refused to equate the pipeline right-of-way easement with "non-Indian fee land" and said "[t]his case is about

business activity engaged in by Arrow and Tesla within the boundaries of the Fort Berthold Indian Reservation." The court reasoned:

> The pipeline easement here involves a right of way to construct, install, operate and maintain oil, gas, and water pipelines on the Indian reservation. The Tribe here has a much more direct and significant interest in the right of way easement because it involves the development and use of tribal resources and directly involves the Tribe's economic interests.

[¶ 19] Arrow contends the district court erred in ruling the right-of-way easement granted to it by the Bureau of Indian Affairs is not the equivalent of non-Indian fee land. Arrow relies on the United States Supreme Court's decision in *Strate*, 520 U.S. at 442, 117 S.Ct. 1404, which involved a civil action in tribal court between two non-Indians who were involved in an accident on a portion of a state highway running through trust land on the Fort Berthold Indian Reservation, which the State maintained under a federally granted right-of-way. The Court rejected the argument that *Montana* did not govern the jurisdictional controversy because the land on which the accident occurred was trust land, concluding the "right-of-way North Dakota acquired for the State's highway renders the 6.59–mile stretch equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Id.* at 454, 117 S.Ct. 1404 (footnote omitted). The Court explained:

> Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's control. The Tribes have consented to, and received payment for, the State's use of the 6.59–mile stretch for a public highway. They have retained no gatekeeping right. So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude. Cf. *[South Dakota v.] Bourland*, 508 U.S. [679,] 689 [113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) ] (regarding reservation land acquired by the United States for operation of a dam and a reservoir, Tribe's loss of "right of absolute and exclusive use and occupation .... implies the loss of regulatory jurisdiction over the use of the land by others"). We therefore align the right-of-way, for the purpose at hand, with land alienated to non-Indians. Our decision in *Montana*, accordingly, governs this case.

*Id.* at 455–56, 117 S.Ct. 1404 (footnote omitted). The Court concluded the consensual relationship exception did not apply, *id.* at 457, 117 S.Ct. 1404, and that tribal court jurisdiction over "this commonplace state highway accident" was not crucial to the political integrity, economic security, or health and welfare of the tribe. *Id.* at 459, 117 S.Ct. 1404. The Court held the "*Montana* rule, ... and not its exceptions, applies to this case," and concluded the tribal court lacked jurisdiction. *Id.* The Supreme Court has since said that the "ownership status of land ... is only one factor to consider in determining whether [tribal] regulation of the activities of nonmembers is 'necessary to protect tribal self-government or to control internal relations.'" *Nevada v. Hicks*, 533 U.S. 353, 360, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001).

[¶ 20] The parties have not cited, and we have not found, a case classifying the ownership status for Indian jurisdictional purposes of a right-of-way easement for a pipeline on trust property. Courts have considered rights-of-way easements in other contexts and have concluded that *Strate* applies to rights-of-way easements granted to private entities over Indian reservation

lands. For example, in *Big Horn Cty. Elec. Coop., Inc. v. Adams,* 219 F.3d 944, 947 (9th Cir.2000), an electric cooperative sued tribal officials over their placement of an ad valorem tax on the value of its utility property located on rights-of-way across Indian land. In determining whether the utility property was located on the equivalent of non-Indian fee land for purposes of applying *Montana,* the court said:

> The Supreme Court [in *Strate* ] considered the following factors before ultimately concluding that the state highway was the equivalent of non-Indian fee land: (1) the legislation creating the right-of-way; (2) whether the right-of-way was acquired with the consent of the tribe; (3) whether the tribe had reserved the right to exercise dominion and control over the right-of-way; (4) whether the land was open to the public; and (5) whether the right-of-way was under state control. [520 U.S.] at 454–56 [117 S.Ct. 1404].

*Id.* at 950. The court concluded that although the electric cooperative's easements met only the first three criteria in *Strate,* the "rights-of-way are the equivalent of non-Indian fee land for the purpose of considering the limits of the Tribe's regulatory jurisdiction." *Id.* In *Burlington N. R.R. Co. v. Red Wolf,* 196 F.3d 1059, 1063 (9th Cir.1999), the court also concluded a right-of-way granted to a railroad was the equivalent of non-Indian fee land and the tribal court lacked civil jurisdiction over a tort claim arising from an accident occurring on the right-of-way. The court reasoned:

> There is no principled distinction to be made between the jurisdictional analysis applicable to a congressionally-granted highway right-of-way and a congressionally-granted railroad right-of-way. In each case, Congress has acted within its plenary power to bestow rights to a

parcel of land upon one party, thereby limiting the rights of another to the same land.

*Id.*

[¶ 21] In this case, Congress has authorized grants of rights-of-way over Indian lands, *see* 25 U.S.C. § 323–328, and has specifically authorized grants of easements for pipelines. *See* 25 U.S.C. § 321. 3 Bears does not contend that the Tribe refused to consent to this pipeline easement. 3 Bears points to nothing establishing that the Tribe reserved the right to exercise dominion and control over the pipeline easement. Assuming for purposes of argument this pipeline easement is not under state control and the land apparently is open to the public, we conclude, as did the courts in *Adams* and *Red Wolf,* that the right-of-way pipeline easement acquired by Arrow is the equivalent of non-Indian fee land.

[¶ 22] In concluding the parties' conduct threatens the political integrity, economic security, or the health or welfare of the tribe, the district court reasoned the Tribe has a "direct and significant interest in the right of way easement because it involves the development and use of tribal resources and directly involves the Tribe's economic interests." We disagree for two reasons.

[¶ 23] First, the Tribe has not intervened or made an appearance in this action. This Court has ruled that a private party has no standing to advance a tribe's interests when the tribe itself fails to appear. *See Baker Elec. Coop., Inc. v. Pub. Serv. Comm'n,* 451 N.W.2d 95, 97–98 (N.D. 1990). Second, in determining whether conduct threatens or has a direct effect on the political integrity, economic security, or health or welfare of the tribe, a court must look at the "subject matter" of the lawsuit. *Luger v. Luger,* 2009 ND 84, ¶ 11, 765 N.W.2d 523. The lawsuit in this

case does not concern the physical integrity of the pipeline or a claimed violation of the terms of the right-of-way easement acquired by Arrow from the Bureau of Indian Affairs. Rather, the case involves the validity of a pipeline construction lien filed under state law resulting from a contractual payment dispute between non-tribal members and relating to property that we treat for jurisdictional purposes as non-Indian fee land. The subject matter of this lawsuit is far too attenuated to constitute any threat to the political integrity, economic security, or health or welfare of the Tribe. *Cf. id.* at ¶ 11 (district court had subject matter jurisdiction where conduct was parties' failure to comply with request for accounting of partnership income and assets over a six-year period). We conclude the district court erred in ruling to the contrary.

[¶ 24] We conclude the district court erred in ruling that, under *Montana*, the tribal court had jurisdiction over this lawsuit.

## IV

[¶ 25] State court jurisdiction in Indian country is governed by the United States Supreme Court's decision in *Williams*, 358 U.S. 217, 79 S.Ct. 269. *See Lavallie v. Lavallie*, 2015 ND 69, ¶ 8, 861 N.W.2d 164. In *Byzewski v. Byzewski*, 429 N.W.2d 394, 396 (N.D.1988), this Court explained:

> [T]he United States Supreme Court [in *Williams* ] held that state courts do not have jurisdiction over a claim by a non-Indian against an Indian which arises on an Indian reservation. In that case a non-Indian, operating a general store on an Indian reservation, brought suit in Arizona state court to collect for goods sold on credit to a tribal member. The Supreme Court concluded that to allow the exercise of state jurisdiction under

the circumstances "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee, supra*, 358 U.S. at 223, 79 S.Ct. at 272. Only "where essential tribal relations were not involved and where the rights of Indians would not be jeopardized" could state jurisdiction be asserted. *Williams v. Lee, supra*, 358 U.S. at 219, 79 S.Ct. at 270. Thus, absent congressional action, the question is whether the state action infringes on the right of reservation Indians to make their own laws and be ruled by them. *Williams v. Lee, supra*, 358 U.S. at 220, 79 S.Ct. at 271.

Essentially, under *Williams*, state court jurisdiction is foreclosed if it is preempted by incompatible federal law or if it would undermine the right of reservation Indians to make their own laws and be ruled by them. *See McKenzie Cty. Soc. Servs. Bd. v. V.G.*, 392 N.W.2d 399, 401–02 (N.D. 1986).

[¶ 26] 3 Bears relies on the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 *et seq.*, which authorizes tribes to adopt a constitution and bylaws, and 25 U.S.C. § 476(e), which gives a tribe the power "to prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe." 3 Bears also cites to provisions of the Constitution of the Three Affiliated Tribes of the Fort Berthold Indian Reservation which carry out these powers and set forth the jurisdiction of tribal courts: Art. VI, § 5(I) (power to make assignments and leases of tribal lands, and otherwise to manage tribal lands, interests, interests in tribal lands, and property upon such lands); Art. IX, § 1 (power to deal with tribal lands); Art. I (jurisdiction of tribe extends to all land within reserva-

tion); and Art. VI, § 3 (powers of Tribal Business Council). 3 Bears also relies on the TERO ordinance and the Fort Berthold Tribal Code Tit. I, ch. 3, §§ 3.2 and 3.3, which provide tribal court jurisdiction over "any and all lands within the reservation boundaries" and over "all persons who reside, enter or transact business within the territorial boundaries of the reservation."

[¶ 27] These provisions establish that the Tribe has been given general Congressional authority to form a government and court system, and that the Tribe has exercised that authority. But the federal statutes do not suggest the state district court is preempted from entertaining this lawsuit, or that *Montana* and its progeny no longer govern questions of tribal court jurisdiction. This case involves the validity of a pipeline lien created under state law, and the Fort Berthold Tribal Code has no provision addressing pipeline construction liens. *Cf. N. Cent. Elec. Coop., Inc. v. N.D. Pub. Serv. Comm'n*, 2013 ND 158, ¶¶ 20–22, 837 N.W.2d 138 (tribe's long-standing utility code and intervention in proceedings supported Public Service Commission's decision that it lacked authority to decide electrical service dispute). As we said earlier, the basis of this lawsuit is a contractual dispute over payments between non-members of the Tribe for construction occurring on non-Indian fee land. Moreover, the tribal court lacks jurisdiction. State court jurisdiction over this lawsuit is not foreclosed by incompatible federal law, and we conclude state court jurisdiction would not infringe upon the Tribe's right to make its own laws and be ruled by them.

[¶ 28] We conclude the district court has jurisdiction to entertain this action.

## V

[¶ 29] The district court ruled in the alternative that "Arrow and Tesla, as a matter of comity, should be required to exhaust their tribal court remedies before this Court exercises jurisdiction."

[¶ 30] 3 Bears argues the district court's decision that Arrow and Tesla are required to exhaust tribal court remedies is supported by the United States Supreme Court's decisions in *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) and *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and this Court's decision in *Fredericks v. Eide–Kirschmann Ford, Mercury, Lincoln, Inc.*, 462 N.W.2d 164 (N.D.1990). We reject this argument for two reasons. First, these decisions involved situations where actions were already pending or had come to completion in the tribal court before related federal or state court actions were commenced. That is not the situation here. The tribal court action was filed less than one month before the district court granted the motion to dismiss for lack of subject matter jurisdiction. We do not believe the Supreme Court intended in these decisions to allow parties to invoke the exhaustion requirement by simply responding to a state court lawsuit with the filing of a related action in tribal court. Second, we have recognized that *LaPlante* and *Crow Tribe* "do not expand tribal court jurisdiction." *State ex rel. Olson v. Harrison*, 2001 ND 99, ¶ 18, 627 N.W.2d 153. We have concluded the tribal court lacks jurisdiction. We conclude the district court erred in alternatively ordering Arrow and Tesla to exhaust tribal court remedies.

[¶ 31] We do not address other arguments raised because they are either unnecessary to the decision or are without merit.

## VI

[¶ 32] We conclude the district court has subject matter jurisdiction over this

lawsuit. The judgment is reversed and the case is remanded for further proceedings.

[¶ 33] WILLIAM F. HODNY, S.J., DALE V. SANDSTROM and LISA FAIR McEVERS, JJ., concur.

[¶ 34] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, specially concurring.

[¶ 35] I agree with the majority opinion. I write to note many of the concerns still exist that I expressed in *Gustafson v. Estate of Poitra*, 2011 ND 150, ¶¶ 17–31, 800 N.W.2d 842 (Crothers, J., specially concurring). I adhere to my comments in *Gustafson*.

[¶ 36] DANIEL J. CROTHERS