# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 161

McCormick, Inc., individually and derivatively
on behalf of Native Energy Construction, LLC,
and Northern Improvement Company,

Plaintiffs, Appellees,

and Cross-Appellants

v.

Terrance Fredericks, a/k/a Terry Fredericks,

Defendant, Appellant,

and Cross-Appellee

### No. 20190254

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Monte L. Rogneby (argued), and Diane M. Wehrman (appeared), Bismarck, ND, for plaintiffs, appellees, and cross-appellants.

Jeffrey S. Rasmussen (argued), Louisville, CO, and Chad C. Nodland (appeared), Bismarck, ND, for defendant, appellant, and cross-appellee.

# McCormick v. Fredericks
## No. 20190254

**Crothers, Justice.**

[¶1] Terrance Fredericks appeals from a district court judgment ordering him to pay more than $1,000,000 in damages to McCormick, Inc.; Native Energy Construction, LLC; and Northern Improvement Company. McCormick and Northern Improvement cross-appeal from a judgment denying their motion for a judicially supervised winding up of Native Energy. We affirm in part, reverse in part, and remand.

I

[¶2] In 2010, McCormick and Fredericks created Native Energy Construction to engage in construction operations related to oil production. Fredericks owned 51% of the company, and McCormick owned 49%. Fredericks was Native Energy's president, and McCormick and Northern Improvement provided management services to Native Energy for a fee of 5% of Native Energy's gross revenues.

[¶3] McCormick and Fredericks executed a purchase agreement in April 2014 for Fredericks' purchase of McCormick's interest in Native Energy. Fredericks was unable to complete the purchase. The parties did not wind up Native Energy and the business was involuntarily dissolved by the secretary of state in May 2015.

[¶4] In 2016, McCormick and Northern Improvement sued Fredericks, alleging he breached contractual and fiduciary duties owed to Native Energy, McCormick and Northern Improvement. McCormick alleged Fredericks took distributions from Native Energy without making a corresponding distribution to McCormick, wrongfully converted Native Energy's assets for his own use, made improper payments to his wife and performed other business activities on behalf of Native Energy without McCormick's authorization.

[¶5] Fredericks counterclaimed, alleging McCormick breached a fiduciary duty by taking the 5% management fee from Native Energy's gross revenues.

Fredericks also requested a judicially supervised winding up of Native Energy under N.D.C.C. § 10-32.1-51.

[¶6] Native Energy and McCormick each moved for partial summary judgment. The district court granted McCormick's and Northern Improvement's motion, concluding Fredericks breached a contract with McCormick for the purchase of $168,879 worth of Native Energy equipment. The court also concluded Fredericks individually received a $35,104 payment due to Native Energy, he received $110,624 in distributions from Native Energy for which no corresponding distribution was paid to McCormick, and Native Energy failed to pay Northern Improvement $44,400 for the transportation and reconditioning of equipment in preparation for public auction. The court ordered Fredericks to pay $203,983 to Native Energy, and $49,795.76 to McCormick for the distributions, and transfer $44,400 from Native Energy's checking account to Northern Improvement.

[¶7] The remaining issues were tried in October, 2017. That proceeding ended in a mistrial when McCormick's witness Steve McCormick testified on cross-examination about the Vogel law firm's review of master service agreements between Native Energy and third-party oil companies. McCormick testified Vogel was indirectly providing services for Native Energy. Fredericks moved for a mistrial, arguing a conflict of interest existed between Vogel, McCormick and Native Energy. The district court granted Fredericks' motion and declared a mistrial and disqualified Vogel from representing McCormick.

[¶8] McCormick moved for reconsideration of the district court's decision to disqualify Vogel. McCormick argued Vogel's review of master service agreements was not the same or a similar matter to this case. McCormick asserted Vogel should not be disqualified from representing it because Native Energy was not adverse to McCormick and Vogel did not represent Fredericks in earlier matters. After a hearing, the court concluded Vogel had not represented Native Energy or Fredericks and this case was not the same or similar to Vogel's review of master service agreements. The court concluded Vogel was not disqualified from the case.

[¶9]   After a three-day trial in September 2018, the jury found Fredericks breached his fiduciary duties to McCormick and Native Energy and Fredericks' actions constituted fraud. The jury awarded McCormick $352,668.55 in compensatory damages and $400,000 in exemplary damages.

[¶10] McCormick moved the district court for a supervised winding up of Native Energy. Fredericks subsequently withdrew his request for a supervised winding up and opposed McCormick's motion. The court denied the motion and entered a final judgment.

## II

[¶11] Fredericks argues the district court lacked jurisdiction to decide his counterclaim against McCormick for breach of fiduciary duty related to the 5% management fee. He claims the court of the Three Affiliated Tribes of the Fort Berthold Reservation had jurisdiction because the management fee agreement was a contract made on the reservation between Steve McCormick, a non-Indian, and Fredericks, a tribal member.

[¶12] This Court reviews challenges to a district court's subject matter jurisdiction de novo when the jurisdictional facts are not in dispute. *Schweitzer v. Miller*, 2020 ND 79, ¶ 6, 941 N.W.2d 571. "A party may raise the question of subject matter jurisdiction at any time during the proceeding." *Id.*

[¶13] "[T]ribal court jurisdiction is determined under the test set forth in *Montana v. United States*, 450 U.S. 544 (1981)." *Arrow Midstream Holdings, LLC v. 3 Bears Const., LLC*, 2015 ND 302, ¶ 10, 873 N.W.2d 16. Generally, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at ¶ 12 (quoting *Montana*, at 565). An exception to the general rule is that "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Arrow*, at ¶ 12 (quoting *Montana*, at 565).

[¶14] Fredericks brought claims against McCormick, not a claim against Steve McCormick individually. Fredericks' claims against McCormick arose from his ownership interest in Native Energy, a North Dakota limited liability company. *See Arrow*, 2015 ND 302, ¶ 16, 873 N.W.2d 16 ("[I]t is not the particular form of business entity used by a tribe or tribal member, but whether the business entity was created under tribal law or state law that determines if the business entity should be treated as a tribe or tribal member."). In addition, Fredericks has not shown how the exception to the general rule outlined in *Montana* vested the tribal court with exclusive jurisdiction over his counterclaims against McCormick. Fredericks has not claimed the management fee between Native Energy and McCormick involved a consensual relationship with the tribe. Under these facts, the district court had jurisdiction to decide the parties' claims, and this Court has jurisdiction to decide the appeal.

III

[¶15] Fredericks argues the district court erred by not providing the jury instructions on contract law relating to the management fee. He asserts there was no agreement for the fee.

[¶16] Jury instructions should fairly inform the jury of the law applicable to the case and fairly cover the claims made by both sides of the case. *Tidd v. Kroshus*, 2015 ND 248, ¶ 7, 870 N.W.2d 181. A district court "is not required to instruct the jury in the exact language sought by a party if the court's instructions correctly and adequately inform the jury of the applicable law." *Hildenbrand v. Capital RV Ctr., Inc.*, 2011 ND 37, ¶ 21, 794 N.W.2d 733. "On appeal, we review jury instructions as a whole, and if they correctly advise the jury of the law, they are sufficient." *Tidd*, at ¶ 7. If the district court errs in its instructions, this Court decides whether the error was harmless. *Id.*

[¶17] During a discussion outside the jury's presence, Fredericks' attorney argued jury instructions on contract law were necessary because Steve McCormick testified there was an oral agreement for the management fee between himself, on behalf of McCormick, Inc., and Fredericks. McCormick's

4

attorney stated although Steve McCormick testified about an oral agreement, contract-related instructions were not necessary because the parties' claims against each other were primarily breach of fiduciary duty claims. McCormick's attorney claimed without contract-related instructions, the jury still could find there was no agreement for the fee and then decide whether fiduciary duties were breached by McCormick's receipt of the fee.

[¶18] With regard to jury instructions related to contracts, the district court stated:

> "[T]he only instruction that really comes to my mind here is that based on your argument and Mr. Rogneby's argument, is that an expressed contract is one the terms can be stated orally or in writing. An implied contract is one in which in its existence [its] terms are manifested by conduct."

After more discussion, the court stated, "Overall I think this is a fiduciary duty issue, so I'm not going to add any of those contract instructions." The court instructed the jury on the duties a limited liability company's members owe to the company and each other, such as the duty of loyalty, duty of care and duty of good faith and fair dealing. The court also provided instructions related to limited liability companies:

> "RELIANCE ON INFORMATION AND ACTIONS OF OTHER MANAGERS
>
> A manager/member of a limited liability company is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by one or more managers or employees of the limited liability company the manger reasonably believes to be reliable and competent in the matters presented.
>
> PRESUMED CONSENT IF FAIL TO OBJECT AT MEETING
>
> A manager who is present at a meeting of the board when action is approved by the affirmative vote of a majority of the managers present is presumed to have assented to the action approved unless the manager votes against the action at the meeting.

5

RATIFICATION
The managers/members of a limited liability company may authorize or ratify after full disclosure of all of the material facts a specific act or transaction that would otherwise violate the duty of loyalty.

DEFENSE TO BREACH OF LOYALTY - SELF DEALING
It is a defense to a claim of self-dealing that the transaction was fair to the limited liability company."

[¶19] Fredericks asserts contract-related jury instructions were necessary because the core issues in this case were contract claims. He argues the management fee was not authorized by the written operating agreement governing Native Energy. He also argues an oral agreement for the fee violated the statute of frauds.

[¶20] McCormick sued Fredericks for breaching fiduciary duties, and Fredericks counterclaimed, making numerous allegations McCormick breached its duties of loyalty, competency and disclosure regarding the management fee. Fredericks alleged in the alternative that McCormick breached any contract allowing it to receive the fee; however, Fredericks provided no evidence of damages suffered from the alleged breach. Fredericks' counterclaim did not allege McCormick breached Native Energy's operating agreement by receiving the fee.

[¶21] McCormick presented evidence that Fredericks consented to the management fee. Fredericks testified he started paying McCormick the fee in 2010, the fee was discussed at meetings and the meeting minutes did not show he objected to the fee. McCormick presented evidence demonstrating it invoiced the fee and as Native Energy's president Fredericks paid it. The purchase agreement executed by McCormick and Fredericks stated McCormick was entitled to the management fee up to the date of the buyout.

[¶22] Contrary to Fredericks' argument, the core issues in this case involved whether either party breached fiduciary duties owed to each other and to Native Energy. After reviewing the parties' claims, the evidence presented and

6

the jury instructions as a whole, the district court did not err in failing to instruct the jury on contract law.

## IV

[¶23] Fredericks asserts the district court erred by allowing McCormick and Northern Improvement to each have a designated corporate representative at trial.

[¶24] We review a district court's decision relating to sequestration of witnesses under an abuse of discretion standard. *State v. Wanner*, 2010 ND 121, ¶ 13, 784 N.W.2d 143. A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, it misinterprets or misapplies the law or when its decision is not based on a rational mental process. *Hoffman v. Jevne*, 2019 ND 156, ¶ 8, 930 N.W.2d 95.

[¶25] At trial, McCormick's and Northern Improvement's attorney designated a representative for each entity. Fredericks requested sequestration of the representatives during their testimony, arguing the companies were effectively the same entity and the representatives should not be allowed to hear each other's testimony. The district court did not order sequestration and allowed each company to have a corporate representative present, relying on N.D.R.Ev. 615.

[¶26] Rule 615, N.D.R.Ev., provides:

> "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony, or the court may do so on its own. This rule does not authorize excluding:
> (a) a party who is a natural person;
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
> (d) a person authorized by law to be present."

[¶27] Under N.D.R.Ev. 615(b), each corporate plaintiff, McCormick and Northern Improvement, was allowed to have a designated representative present at trial. The district court's decision to not sequester the corporate representatives during testimony was not an abuse of discretion under N.D.R.Ev. 615(b).

V

[¶28] Fredericks contends the district court erred in granting McCormick summary judgment. He argues the court erred by ordering him to pay McCormick $49,795.76 of the distributions he received from Native Energy. He claims the amount of distributions were in dispute, and the proper remedy was to credit McCormick's Native Energy capital account instead of ordering Fredericks to pay McCormick for the distributions.

[¶29] "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 7, 938 N.W.2d 133. On appeal, we view the evidence in the light most favorable to the party opposing the motion. *Id.* Whether the district court properly granted summary judgment is a question of law we review de novo on the entire record. *Id.*

[¶30] McCormick claimed Fredericks received $110,624 in distributions from February 2013 to March 2014. The claim was based on Fredericks' answers to McCormick's request for admissions. Fredericks later disputed the amount of distributions and submitted a transaction report showing he received $88,144 in distributions from April 2013 to March 2014. McCormick acknowledged summary judgment was not appropriate as to the amount in dispute, but argued summary judgment was appropriate as to the $88,144 in distributions that Fredericks stated he received.

[¶31] In September 2017, the district court granted partial summary judgment in favor of McCormick, ordering Fredericks to pay McCormick $54,216.05 of the $110,624 in distributions Fredericks received. The court ordered

8

Fredericks to pay Native Energy $203,983 for the purchase of Native Energy's equipment, and for a debt due to Native Energy. The court also ordered Fredericks to authorize a $44,400 payment from Native Energy's checking account to Northern Improvement.

[¶32] Fredericks moved to reconsider, arguing the district court erred because the amount of distributions were in dispute. In response, McCormick claimed Fredericks admitted to receiving $110,624 in distributions, but acknowledged a dispute existed as to $9,000 Fredericks claimed he repaid to Native Energy.

[¶33] In June 2018, the district court revised its summary judgment order, reducing the amount of distributions Fredericks received by $9,000 as requested by McCormick.

[¶34] McCormick first acknowledged more than $22,000 was in dispute, and later acknowledged that $9,000 was in dispute. Despite these acknowledgments that the amount of distributions received by Fredericks was in dispute, the district court granted McCormick partial summary judgment. In viewing the evidence in a light most favorable to Fredericks, the court erred by granting McCormick summary judgment for the distributions Fredericks received. The amount of distributions received by Fredericks is a genuine issue of material fact.

[¶35] The district court also erred as a matter of law when it ordered Fredericks to pay McCormick for the distributions. Chapter 10-32, N.D.C.C., was in effect when Fredericks received the distributions from Native Energy. In 2015, the legislature repealed N.D.C.C. ch. 10-32 and replaced it with N.D.C.C. ch. 10-32.1. 2015 N.D. Sess. Laws ch. 87, § 41. Under N.D.C.C. § 10-32-63, when "a member becomes entitled to receive a distribution, the member has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution." When Fredericks received his distributions from Native Energy, McCormick also became entitled to distributions and had the status of a creditor of Native Energy, not Fredericks individually.

[¶36] The district court erred by granting partial summary judgment to McCormick relating to the distributions received by Fredericks. As to the remainder of the court's summary judgment decisions, the court did not err in granting partial summary judgment to McCormick, ordering Fredericks to pay Native Energy $203,983 for the purchase of Native Energy's equipment and for a debt due to Native Energy. The court did not err by ordering Fredericks to authorize a $44,400 payment from Native Energy's checking account to Northern Improvement. We reverse paragraph 3(c) of the judgment ordering Fredericks to pay McCormick for the distributions and remand for a determination of the amount of distributions due to McCormick from Native Energy.

## VI

[¶37] Fredericks argues the jury erred in its exemplary damages award. Fredericks grounds his exemplary damages argument on his earlier arguments relating to erroneous jury instructions and the district court's summary judgment decisions.

[¶38] The district court admitted into evidence at trial the revised order for partial summary judgment. Fredericks did not object to its admission. "A party must make a specific objection to evidence at the time it is offered for admission into evidence to give the opposing party an opportunity to argue the objection and attempt to cure the defective foundation, and to give the trial court an opportunity to fully understand the objection and appropriately rule on it." *May v. Sprynczynatyk*, 2005 ND 76, ¶ 26, 695 N.W.2d 196. Rule 103, N.D.R.Ev., provides:

> "(a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>> (1) if the ruling admits evidence, a party, on the record:
>>> (A) timely objects or moves to strike; and
>>> (B) states the specific ground, unless it was apparent from the context;"

10

[¶39] Fredericks argues the exemplary damages were erroneous because the district court erred in its decisions relating to jury instructions and summary judgment. We have concluded the jury instructions were not erroneous and a portion of the summary judgment was erroneous. Although we are reversing and remanding a portion of the summary judgment, we are not convinced the court erred by admitting the revised order for partial summary judgment into evidence. The exemplary damages award against Fredericks was not erroneous.

## VII

[¶40] Fredericks claims the district court erred when it refused to disqualify Vogel from the case. Fredericks argues Vogel had a conflict of interest because it was representing Native Energy and Fredericks when Vogel reviewed master service agreements. He asserts Vogel's review of the agreements was substantially related to this case.

[¶41] A district court's decision on whether to disqualify a law firm or a lawyer will only be reversed for an abuse of discretion. *Sargent Cty. Bank v. Wentworth*, 500 N.W.2d 862, 871 (N.D. 1993).

[¶42] Rule 1.9, N.D.R. Prof. Conduct, relating to a lawyer's duties to a former client, states in part:

> "(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
> > (1) whose interests are materially adverse to that person; and
> > (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client consents in writing."

[¶43] Fredericks' claim that Vogel had a conflict of interest hinges on Steve McCormick's testimony in the first trial about Vogel's review of master service

11

agreements between Native Energy and third-party oil companies. McCormick testified Vogel was indirectly providing services for Native Energy.

[¶44] The district court concluded Vogel was not disqualified from representing McCormick. The court found McCormick hired Vogel to review master service agreements between Native Energy and other oil companies. The court found there was no agreement for Vogel to provide legal services to Native Energy, and Vogel did not communicate with Native Energy or Fredericks.

[¶45] The district court also found even if Vogel previously represented Native Energy and Fredericks, Fredericks' arguments failed under N.D.R. Prof. Conduct 1.9. The court found Vogel's review of master service agreements was not substantially related to the present case:

> "In this case, assuming Vogel represented Fredericks, the Court utilizes the substantial relationship test, which presumes Vogel acquired confidential information concerning Fredericks during the course of reviewing Master Service Agreements that could be used against Fredericks in advocating McCormick's derivative claim on behalf of Native Energy. However, after reviewing the record the Court finds that Vogel only reviewed the Master Service Agreements between [Native Energy] and other oil companies on behalf of McCormick. None of the Master Service Agreements entered into between [Native Energy] and the other oil companies are at issue in this case, the Plaintiffs have repeatedly refuted Fredericks' claims of obtaining confidential information, and the Court has not received any evidence from either party showing that Fredericks ever communicated with Vogel, which would have given him the reasonable belief that Vogel represented him. The Court finds that Vogel is not representing the Plaintiffs concerning the same or a substantially related matter; therefore, Vogel is not disqualified under Rule 1.9."

[¶46] After reviewing the record, we conclude the district court did not abuse its discretion in refusing to disqualify Vogel. The court made a reasoned decision and did not act arbitrarily or unconscionably in deciding Vogel could continue to represent McCormick.

## VIII

[¶47] Fredericks argues the district court committed errors in its order for final judgment and final judgment.

## A

[¶48] Fredericks claims the court erred in the order for final judgment when it stated the jury awarded exemplary damages for actual and constructive fraud.

[¶49] The jury found by clear and convincing evidence that Fredericks' actions constituted actual and constructive fraud. The jury awarded McCormick $400,000 in exemplary damages. The jury's verdict does not explicitly state it awarded exemplary damages because of Fredericks' fraud. However, under N.D.C.C. § 32-03.2-11(1), in an action for the breach of an obligation not arising from contract, a jury may award exemplary damages when it clearly and convincingly finds a defendant committed "oppression, fraud, or actual malice."

[¶50] Reading the verdict as a whole, one may logically conclude the jury awarded exemplary damages because it found Fredericks' actions constituted fraud. The court did not err by stating the jury awarded exemplary damages for actual fraud.

[¶51] Normally, constructive fraud will not support a claim for exemplary damages. Under N.D.C.C. § 32-03.2-11(1), exemplary damages are available only "in an action for the breach of an obligation not arising from contract." In *Erickson v. Erickson*, 2010 ND 86, ¶ 9, 782 N.W.2d 346, this Court held "Because constructive fraud negates a party's apparent consent to the formation of a contract, the claim can succeed only if a party was misled before or while entering a contract." However, here Fredericks did not object to the jury being instructed on constructive fraud, did not object to the jury verdict that included a finding on constructive fraud, and did not object to McCormick's argument that exemplary damages were warranted at least in part due to constructive fraud. Therefore, constructive fraud supporting exemplary damages became law of this case, and the district court did not err entering judgment accordingly. *See Erickson v. Brown*, 2008 ND 57, ¶ 27, 747

N.W.2d 34 ("On this record, the law of the case and the posture of the issues raised by the parties in this appeal militate against any such change in the law [regarding distinctions between fraud and deceit] in this proceeding.").

B

[¶52] Fredericks also asserts the district court erred in its final judgment by ordering him to pay $352,668.55 in compensatory damages to Native Energy and McCormick. Fredericks argues the award should have been awarded solely to Native Energy. The final judgment awarding compensatory damages to Native Energy and McCormick is consistent with the jury's verdict. The court's final judgment relating to compensatory damages was not erroneous.

IX

[¶53] McCormick argues the district court abused its discretion when it denied McCormick's post-trial motion for judicial supervision of Native Energy's winding up.

[¶54] Under N.D.C.C. § 10-32.1-51(5)(a), a court may order judicial supervision of the winding up of a dissolved limited liability company if a member applies and establishes good cause. When a court may do something, it is generally a matter of discretion. *Hoffman*, 2019 ND 156, ¶ 8, 930 N.W.2d 95.

[¶55] McCormick's motion included an affidavit from McCormick's chief financial officer stating he was familiar with Native Energy's accounting and bank records. He stated that according to Native Energy's records, Northern Improvement and McCormick were Native Energy's only known creditors.

[¶56] Fredericks argues McCormick failed to satisfy statutory requirements for a judicially supervised winding up, such as providing notice to outstanding or potentially unknown creditors under N.D.C.C. § 10-32.1-53. The record does not demonstrate whether Native Energy published a notice to unknown creditors: moreover, publishing a notice to creditors under N.D.C.C. § 10-32.1-53 is not required for the judicial winding up of a limited liability company. Even when done, publishing notice is not mandatory. *See* N.D.C.C. § 10-32.1-

14

53(1) ("A dissolved limited liability company may publish notice of its dissolution and request persons having claims against the company to present them according to the notice."). Rather, publishing notice affects how and how long creditors may bring claims. *See* N.D.C.C. § 10-32.1-53(3) and (4).

[¶57] The district court denied McCormick's motion without explanation. "This Court cannot perform its appellate function if we are unable to understand the rationale underlying the district court's decision." *In re Estate of Nelson*, 2015 ND 122, ¶ 8, 863 N.W.2d 521. We need to know the reasons for the court's decision before we can intelligently rule on the issues, and if the court does not provide an adequate explanation of the evidentiary and legal basis for its decision we are only left to speculate whether the court appropriately applied the law. *Id.*

[¶58] We do not know why the district court denied McCormick's motion. The court's order is silent as to whether McCormick established good cause for a judicially supervised winding up of Native Energy. We therefore reverse and remand for further proceedings.

X

[¶59] The parties' remaining arguments are either without merit or not necessary to our decision. The portion of the final judgment ordering Fredericks to pay McCormick $49,795.76 is reversed and remanded for proceedings consistent with this opinion. The remainder of the final judgment is affirmed. The judgment denying McCormick's motion for a judicially supervised winding up of Native Energy is reversed and remanded for further proceedings.

[¶60] Daniel J. Crothers
Lisa Fair McEvers
Gerald W. VandeWalle
Jerod E. Tufte
Jon J. Jensen, C.J.